[No. 38054-1-I. Division One. August 25, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. SHERLEE PESTA, *Appellant*.

*Eric Broman, Eric J. Nielsen,* and *Nielsen, Broman & Associates, P.L.L.C.,* for appellant.

*James H. Krider, Prosecuting Attorney,* and *David F. Thiele, Deputy,* for respondent.

Cox, J. — Sherlee Pesta appeals her conviction for first degree custodial interference in violation of RCW 9A.40.060. She claims that there was insufficient evidence to prove that "a court-ordered parenting plan" was in effect during the charging period. She also argues that the trial court erred by failing to give her proposed jury instruction defining "parenting plan" for purposes of the criminal statute to include all the terms of RCW 26.09.194(2). This latter statute concerns temporary parenting plans under domestic relations law.

We hold that there was sufficient evidence in the record to show the existence of a "court-ordered parenting plan" under RCW 9A.40.060 for the relevant period. Moreover, the trial court did not abuse its discretion by refusing to give an instruction that defined "parenting plan" for purposes of the criminal statute to include all the elements set forth in RCW 26.09.194. Accordingly, we affirm.

James and Sherlee Pesta began their relationship in 1983 and remained together for approximately 10 years. They never married. Their son J was born in May 1986. After the Pestas separated in February 1994, J stayed with Ms. Pesta.

In June 1994, Mr. Pesta sought visitation with J. Ms. Pesta opposed Mr. Pesta's request. On June 7, 1994, the trial court entered a temporary order that appointed a guardian ad litem to do an investigation and set over for hearing on August 23, 1994, certain issues raised by Ms. Pesta in her opposition to Mr. Pesta's request for visitation. The June 7 temporary order further provided:

(3) Pending further hearing of the court and completion of the GAL investigation, the father shall have visitation with [J] as follows: drop off/exchange shall be at Ellensburg police station at 10 P.M. on Monday and 2 P.M. Sunday. Parents shall do the pickup and drop off. Father's 1st week shall be

the week beginning June 20-26; thereafter the last [week] of each month Monday through Sunday.

In June and July, Ms. Pesta complied with the terms of the June order and provided visitation by taking J to the Ellensburg police station for Mr. Pesta to pick up. Ms. Pesta and Mr. Pesta arranged the August visitation for a day prior to the scheduled hearing on August 23. Ms. Pesta and J failed to appear at either the Ellensburg police station on the day of scheduled visitation or the court hearing the following day.

On August 26, 1994, the trial court entered an order that adopted Mr. Pesta's proposed parenting plan as the effective temporary parenting plan for J. The order provided, in relevant part:

1. Father's (James Pesta) proposed parenting plan is hereby adopted as the effective temporary parenting plan of this case. As such James Pesta is hereby designated the custodian of [J] for purposes of all other state and federal status [sic] which require a designation or determination of custody. This order shall be effective immediately.

2. James Pesta, Respondent father herein is authorized to use whatever legal means, including the assistance of appropriate law enforcement, to obtain the return of custody/primary residential placement of the parties' child [J] to him.

As of the date of entry of this order, Mr. Pesta had not seen J since their July visit.

About three weeks after entry of the August order, Mr. Pesta went to Oregon. There, he observed from a distance J leaving a house. J was accompanied by Ms. Pesta, two other children, and a female friend of Ms. Pesta's. They all got into a car, and Mr. Pesta was unable to contact J.

In late February 1995, police arrested Ms. Pesta at Sea-Tac Airport when she arrived on a flight from Spokane. The arrest was based on an arrest warrant for a charge of custodial interference.

Thereafter, police executed a search warrant on a resi-

dence in Spokane. They discovered J under a bed wearing a blond wig, a pink sweatshirt, no pants, and nail polish on his fingernails and toenails. J was very upset and crying when the police found him.

Child Protective Services delivered J to Mr. Pesta at the Spokane airport in March 1995. As of that time, he had not had any contact with J since the July 1994 visitation.

A jury convicted Ms. Pesta of first degree custodial interference.

# I

## Sufficiency of the Evidence

Ms. Pesta first challenges the sufficiency of the evidence to convict her of first degree custodial interference. The State charged her with violating RCW 9A.40.060(2), which provides,

A parent of a child is guilty of custodial interference in the first degree if the parent takes, entices, retains, detains, or conceals the child, with the intent to deny access, from the other parent having the lawful right to time with the child pursuant to a court-ordered parenting plan, and:

(a) Intends to hold the child permanently or for a protracted period; or

(b) Exposes the child to a substantial risk or illness or physical injury; or

(c) Causes the child to be removed from the state of usual residence.

■ When an appellant challenges the sufficiency of the evidence, our inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[1] For

---

[1]*State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)) (emphasis omitted).

purposes of a challenge to the sufficiency of the evidence, the appellant admits the truth of the State's evidence and all inferences that can be reasonably drawn from it.[2]

In her opening brief, Ms. Pesta renews the argument that she made below. She claims that no parenting plan existed as of the time of the June 7, 1994 order. She argues that order was merely a visitation order, not a "court-ordered parenting plan" as required by RCW 9A.40.060. She relies exclusively on RCW 26.09.194(2)[3] to define what a "parenting plan" is for the purposes of the criminal statute.

In response, the State argues that the August 26, 1994 order that adopted Mr. Pesta's proposed parenting plan is sufficient evidence of a court-ordered parenting plan for purposes of the criminal statute. Alternatively, the State argues that the June 7, 1994 visitation order was sufficient evidence of a court-ordered parenting plan because it gave Mr. Pesta the right to time with J, a right Ms. Pesta denied by withholding visitation.

In reply to the State's argument that the August 26, 1994 order is sufficient evidence of a parenting plan, Pesta maintains that order is also insufficient. She argues that the order fails to show that a valid parenting plan—one fulfilling all the requirements of RCW 26.09.194(2)—existed.

We conclude that we need not address whether the June 7 order was a court-ordered parenting plan for purposes of

---

[2]*State v. Jones*, 63 Wn. App. 703, 707-08, 821 P.2d 543, *review denied*, 118 Wn.2d 1028 (1992).

[3]RCW 26.09.194(2) provides:

"At the hearing [on a motion for an order approving a temporary parenting plan], the court shall enter a temporary parenting order incorporating a temporary parenting plan which includes:

"(a) A schedule for the child's time with each parent when appropriate;

"(b) Designation of a temporary residence for the child;

"(c) Allocation of decision-making authority, if any. . . .

"(d) Provisions for temporary support for the child; and

"(e) Restraining orders, if applicable . . . ."

RCW 9A.40.060. For the reasons we explain below, we hold that the August 26, 1994 order that adopted Mr. Pesta's proposed parenting plan as the effective temporary parenting plan was sufficient evidence of a court-ordered parenting plan for purposes of the criminal statute.

■ The question we must address is whether proof of the statutory elements of a temporary parenting plan is required to convict a parent charged with custodial interference. Statutory construction is a question of law that we review de novo.[4]

■ The primary objective of statutory construction is to carry out the intent of the Legislature by examining the language of the statute.[5] We consider all provisions of an act in relation to each other, and, if possible, harmonize them to ensure proper construction for each provision.[6] Courts should avoid strained, unlikely, or unrealistic consequences.[7] Furthermore, the principles of statutory construction set forth in RCW 9A.04.020(2) state, "The provisions of [the Washington Criminal Code] shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title." RCW 9A.04.020(1)(a) requires that we construe the criminal code "[t]o forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests."

■■ With these guidelines in mind, we first examine the statutory context in which the custodial interference statute appears.[8] First, the legislative history of the 1994 amendment to RCW 9A.40.060 indicates that it was

---

[4]*State v. Ford*, 125 Wn.2d 919, 923, 891 P.2d 712 (1995).

[5]*Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 809, 756 P.2d 736 (1988).

[6]*Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982).

[7]*State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

[8]*See State v. Schimmelpfennig*, 92 Wn.2d 95, 102, 594 P.2d 442 (1979).

intended to update the provisions regarding "custody" to reflect the amended domestic relations statutes. The amendment replaced references to "custody" with references to "residential time" as determined by "parenting plans."[9] Second, the custodial interference statute, as amended, contains no definition of "parenting plan." However, the cross reference to RCW 26.09.160 in the same chapter of the session laws that amended the custodial interference statute makes clear that it was the domestic relations title that was the source of the parenting plan concept.[10] Third, the cross reference to the domestic relations title and the placement of the custodial interference statutes in the same chapter as kidnapping and unlawful imprisonment, Chapter 9A.40, indicate to us that the Legislature's purpose was to criminalize a parent intentionally depriving the other parent of the right to time with their child.

The obvious purpose of this statute is to prevent conduct that inflicts substantial harm to children and their parents. The proscribed conduct is one parent depriving the other parent of the right to time with the child.

▮ Pesta urges us to read the statute to require that proof of a "parenting plan," for the purposes of custodial interference, includes proof of every element of the "temporary parenting plan" provisions of RCW 26.09.194. We reject this argument.

There are three types of parenting plans in the domestic relations statute: temporary parenting plans,[11] perma-

---

[9]*See* Final Bill Rep., HB 2333 at 1 ("The custodial interference statutes were adopted in 1984, when the family law provisions referred to parents' 'lawful right to custody' of their children. After the custodial interference statutes were adopted, the Legislature revised the domestic relations statutes, replacing the term 'custody' with 'residential time' as determined by 'parenting plans.' ").

[10]Laws of 1994, ch. 162, § 2, p. 790.

[11]RCW 26.09.004(1) (defining "temporary parenting plan"); 26.09.194 (setting forth requirements).

nent parenting plans,[12] and decrees involving child custody that were entered prior to January 1, 1988.[13] Each has different requirements. For example, the statute dealing with the contents of a permanent parenting plan states, "The permanent parenting plan shall contain provisions for the resolution of future disputes between the parents, allocation of decision-making authority, and residential provisions for the child."[14] As we have already noted, a temporary parenting plan must include "(a) [a] schedule for the child's time with each parent when appropriate; (b) [d]esignation of a temporary residence for the child; (c) [a]llocation of decision-making authority, if any . . .; (d) [p]rovisions for temporary support for the child; and (e) [r]estraining orders, if applicable . . . ."[15]

It would be, at best, a strained interpretation for us to conclude that the Legislature intended an element of the crime of custodial interference to include details of a parenting plan that are irrelevant to the question of entitlement to time with the child. In short, the allocation of decision-making, temporary support, and restraint provisions of RCW 26.09.194(2) are irrelevant to the custodial interference statute. They have nothing to do with deprivation of the right to time with the child.

■■■ Here, the August 26 order was in evidence. That order, by its express terms, adopted Mr. Pesta's proposed parenting plan as the temporary parenting plan of the case. It is equally clear from the face of the order that Mr. Pesta, by the terms of that parenting plan, had the right

---

[12]RCW 26.09.004(2) (defining); 26.09.184 (setting forth requirements).

[13]RCW 26.09.909.

[14]RCW 26.09.184(2).

[15]RCW 26.09.194(2). *See* 20 WASHINGTON PRACTICE § 33.8, at 264 n.2 ("The requirement that a temporary parenting plan contain provisions for the support of the child is evidently [a] legislative oversight. RCWA 26.09.194 was adopted in 1987 as a part of the original Parenting Plan legislation. In 1989 the [L]egislature removed child support as a part of a permanent parenting plan, probably due to the realization that the support of a child and the residential time of the parents with a child have always been recognized to be two distinct issues.").

to time with J. No rational jury could have found otherwise. The evidence was sufficient to support the conviction for custodial interference.

## II

### Instruction

 ██ Ms. Pesta also argues that the trial court erred by failing to give her proposed instruction defining a "parenting plan" according to the requirements of Title 26 RCW. We review a trial court's rejection of a party's jury instruction for an abuse of discretion.[16] Jury instructions are sufficient if they are not misleading, permit the parties to argue their cases, and, when read as a whole, properly inform the jury of the applicable law.[17]

Here, the trial court instructed the jury that, in order to convict her of first degree custodial interference, it must find, among other facts, that Mr. Pesta "had a lawful right to time with that child *pursuant to a court-ordered parenting plan.*"[18] This requirement comports with the statutory definition of the offense: "A parent is guilty of custodial interference in the first degree if the parent takes, entices, retains, detains, or conceals the child, with the intent to deny access, from the other parent having the lawful right to time with the child *pursuant to a court-ordered parenting plan . . . .*"[19] The court further instructed the jury that "[a] parenting plan includes a temporary court order which sets forth a schedule for the child's time with each parent." In this case, the August 26, 1994 order clearly provided that Mr. Pesta was to have the right to time with J. No other provisions of the temporary parenting plan are relevant to custodial interference. Thus, the trial

---

[16]*Herring v. Department of Soc. & Health Servs.*, 81 Wn. App. 1, 22, 914 P.2d 67 (1996).

[17]*Brown v. Spokane County Fire Protection Dist. 1*, 100 Wn.2d 188, 194, 668 P.2d 571 (1983).

[18](Emphasis added.)

[19]RCW 9A.40.060(2) (emphasis added).

court did not abuse its discretion by rejecting Ms. Pesta's proposed instruction. The instruction that the trial court gave was proper.

At oral argument, Ms. Pesta argued that the orders were not enforceable because they did not contain the required notice that violations would be subject to criminal sanction.[20] But she did not make this argument below or in her opening brief. We will not consider it.[21]

We affirm the judgment and sentence.

The remainder of this opinion has no precedential value and will not be published.[22]

BECKER and ELLINGTON, JJ., concur.

Reconsideration denied November 17, 1997.

Review denied at 135 Wn.2d 1002 (1998).

---

[20]*See* RCW 26.09.165 (requiring such notice in parenting plans).

[21]RAP 2.5(a). *See, e.g.*, *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

[22]RCW 2.06.040.