24 P.3d 1105 (2001)
In re the DEPENDENCY OF J.W.H. (D.O.B.1/3/89), J.C.H. (D.O.B.5/7/91), S.E.H. (D.O.B.1/26/93), Minor Children.
Keith and Lisa Blume, Appellants,
v.
State of Washington Department of Social and Health Services, Respondent.
Nos. 47195-3-I, 47196-1-I, 47197-0-I.
Court of Appeals of Washington, Division 1.
June 11, 2001.
*1107 Christine Anne Jackson, Linda Lillevik, Seattle, for Respondent Matt Huddle.
Heidi Louise Nagel, Seattle, Guardian ad litem for J.H., J.H., S.H.
Jimmie F. Shaw, Seattle, for Respondent Beth Huddle.
Nancy Renee Austin Woodland, Attorney General DSHS, for Respondent DSHS.
Cynthia B. Whitaker, Catherine Wright Smith, Edwards, Sieh, Smith & Goodfriend, Seattle, for Appellants Keith and Lisa Blume.
*1106 BAKER, J.
Intervenors Keith and Lisa Blume appeal the juvenile court's entry of agreed orders finding the children in this action dependent under RCW 13.34.030(5)(c). They claim that the children do not meet the statutory definition of dependency because the Blumes are the children's legal custodians, capable of caring for them. They further claim that the court erred in entering agreed orders of dependency over their objection as parties to the action. Because the Blumes did not have final custody of the children as contemplated by RCW 13.34.030(5)(c), we hold that the children are dependent under the statute. Further, because objecting to the orders of dependency exceeded the Blumes' rights as permissive intervenors, we affirm.

I
Beth and Matthew Huddle met during treatment for drug addiction in the mid-1980s. Over the next 12 years, they married and had three children: J.W.H., now age 12; J.C.H., age 9; and S.E.H., age 8. When Ms. Huddle inherited a substantial sum of money from her mother's estate, she and her husband *1108 relapsed, and over the next several months their use of cocaine increased to the point that they neglected and abused their children. As a result of a family intervention initiated by the children's aunt and uncle, Lisa and Keith Blume, the Huddles again entered treatment. During their treatment programs, they agreed that the Blumes should care for their children.
When the Blumes arrived at the Huddles' home to collect the children, they found the children's living environment filthy and unhealthy in the extreme. Within a short time after moving in with the Blumes, the children began to disclose details of their parents' abuse of them. They alleged that their parents disciplined them by shooting BB guns at them, shoving and hitting them, and putting hot sauce on their tongues. The children also described details of their sexual abuse, and reported that they were sexually active among themselves and with other children. The parents later acknowledged that the children were exposed to explicit sexual acts between the Huddles as well as spouse swapping.
When the Huddles completed their treatment programs, the Blumes did not return the children, but instead filed a petition for custody under RCW 26.10.030(1), alleging that the Huddles were unfit parents. The parties agreed to a temporary order, which provided that the Huddles would submit to a parenting evaluation and the children would continue to reside with the Blumes during a gradual transition back to Beth Huddle's home. Later, the Blumes arranged for the State to remove J.C.H. from their home and place him in therapeutic foster care because of his continued sexual acting out with his siblings (J.W.H., too, was eventually placed in foster care because of his sexualized behavior). The Blumes then obtained a no contact order between the children and their parents and shortly after that, the State filed a dependency petition on behalf of all the Huddle children.
The Blumes moved to intervene in the dependency, which the juvenile court granted both permissively and as a matter of right. As intervenors, the Blumes were actively involved in the action, conducting extensive discovery and participating in the evaluation of the parents and the children. They objected when the Huddles, the children's guardian ad litem, and the Department of Social and Health Services (DSHS) sought to enter agreed orders of dependency regarding the children. Ruling that the Blumes did not have standing to object, the juvenile court entered the orders. The Blumes appeal.

II
As a preliminary matter, DSHS argues that the Blumes lack standing to appeal because they are not aggrieved by the juvenile court's decision. We disagree. RCW 13.04.033(1) provides in relevant part that "[a]ny person aggrieved by a final order of the court may appeal the order as provided in this section."[1] An aggrieved party is one who is a party to the action and whose property, pecuniary or personal rights are directly and substantially affected by the lower court's judgment.[2]
As intervenors, the Blumes are parties to this action. Moreover, at the time the State filed its dependency petition, the Blumes' non-parental custody petition under RCW 26.10.030(1) was pending. Because the juvenile court has exclusive original jurisdiction over dependent or allegedly dependent children,[3] the issue of whether the children are, in fact, dependent directly affects how the Blumes' third party custody action will proceed. This, combined with the Blumes' interest in preserving their established and loving relationships with the Huddle children, gives them standing to appeal.
We also reject DSHS's next contention that the Blumes may not appeal the issue of dependency because RAP 2.2(5) provides that only an order of disposition following a determination of dependency may be appealed. The Blumes identified the orders of *1109 disposition in their notice of appeal. Specifically, they assign error to the bases of the orders, the findings of dependency. We therefore turn to the merits of the Blumes' appeal.
The Blumes claim that the juvenile court has no jurisdiction over the Huddle children because they are not dependent as defined by RCW 13.34.030(5)(c). The subsection defines a dependent child as one who:
Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.[4]
For the purposes of Title 13 RCW, a "custodian" is "that person who has the legal right to custody of the child."[5] The Blumes argue that because they had a court order granting them the temporary care of the Huddle children during the pendency of their third party custody proceeding, they qualify as custodians with "legal right to custody" of the children within the context of the dependency proceeding. Thus, they argue, the children are not dependent.
When interpreting a statute, we do not construe an unambiguous statute.[6] A statute is ambiguous if it is susceptible to more than one meaning or reasonable interpretation.[7] Although the phrase "legal right to custody" might appear plain on its face, in fact, its meaning differs depending on the statutes at issue and circumstances in question. For instance, in State v. Carver,[8] a case involving a father's conviction for custodial interference, the court held that a mother's temporary custody of the parties' child constituted "lawful custody" as contemplated in the custodial interference statute.[9] In In re Marriage of Kastanas,[10] the court relied on the federal Parental Kidnapping Prevention Act to resolve a question of whether California or Washington courts had jurisdiction over the child of the marriage. In supporting its conclusion that Washington had jurisdiction, the court noted that the act explicitly defines a "custody determination" to include "temporary orders, and initial orders."[11]
But in Hanson v. City of Seattle,[12] the Washington Supreme Court held that a deceased firefighter had "legal custody" of his children in the context of the Firemen's Relief and Pensions Act of 1955, despite the fact that he was divorced and his children resided with the other parent. Under the act, children who were not in the legal custody of their parents could not be beneficiaries. The court acknowledged that the intent of the pension statute was to provide liberally for beneficiaries and to that end, "the phrase `legal custody' [must] be given a functional and workable meaning consistent with the purpose and intent of the pension legislation."[13] Because the statutes at issue here have no explicit definition of "legal custody" and the term has been interpreted differently depending upon the statutory context in which it has been applied, we conclude that its use in RCW 13.04.011(6), and the term "custodian" in RCW 13.34.030(5)(c) are ambiguous.
*1110 We interpret an ambiguous statute so as to effect the intent of the Legislature within the context of the entire statute.[14] In so doing, all language within the statute must be given effect so that no portion is rendered meaningless or superfluous.[15] We do not glean the meaning of a particular word from that word alone, but rather from the Legislature's intent within the statute as a whole.[16] Where possible, provisions of an act will be harmonized to ensure proper construction of each provision.[17] In this process, we seek to avoid strained, unlikely, or unrealistic consequences.[18]
In 1978, the Washington Legislature enacted the "Juvenile Court Act in Cases Relating to Dependency of a Child and the Termination of a Parent and Child Relationship."[19] Its purpose in enacting the legislation was first to recognize that "the family unit is a fundamental resource of American life which should be nurtured."[20] To that end, the Legislature declared that "the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized."[21] Part of basic nurture is "the right to a safe, stable, and permanent home...."[22]
Based upon this statement of purpose, it is evident that the Legislature intended to provide a mechanism by which the State could assist children in regaining, or in some cases securing for the first time, a permanent home in a stable, safe, and nurturing family unit.[23] This focus on permanency and stability necessarily precludes any definition of a family unit that is transitory or temporary in nature. Thus, if a child finds herself in a temporary situation, even one that is loving and nurturing, the objectives of the Legislature cannot be achieved if the State may not intervene on behalf of the child. To allow custodians awarded the temporary care of allegedly dependent children to preempt a determination of dependency would render the dependency statutes meaningless, because it would prevent the State from restoring the children to a permanent family unit.
The permanency planning section of the statute supports this interpretation. It provides that the juvenile court must dismiss a dependency once a guardianship or permanent custody order has been entered.[24] No such obligation exists for those with temporary custody under RCW 26.10. We hold that "legal right to custody" as contemplated in the dependency statutes means final legal custody. Because the Blumes did not have a final order of custody of the Huddle children, they did not have "legal right to custody" as contemplated by RCW 13.04.011(6). They are therefore not custodians under RCW 13.34.030(5)(c), and the children are dependent.
The Blumes next argue that the court erred in entering an agreed order of dependency where they, as party intervenors, did not agree to its entry. Generally, an intervenor is treated as an original party to an action.[25] But in the context of dependency proceedings, Washington courts have limited permissive intervenors to the exercise *1111 of only those rights that do not conflict with the rights of the legal parents.[26] In this case, the juvenile court properly allowed permissive intervention, but should not have allowed the Blumes to intervene as a matter of right.
A person may intervene as a matter of right when:
[T]he applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.[27]
In determining whether an applicant has an interest sufficient to intervene as a matter of right, a court makes a case-by-case analysis, balancing the relative concerns of the prospective intervenors, the original parties to the action, and the public in effecting the efficient resolution of the controversy.[28]
In this case, the disposition of the dependency proceeding may well impair the Blumes' attempt to gain custody of the Huddle children under RCW 26.10.030(1) because the goal in dependency proceedings is to rehabilitate the parents where possible and to reunify the family. There is no such goal in custody proceedings under RCW 26.10. In fact, successful reunification in the dependency proceeding necessarily means defeat to the Blumes in their third party custody action. But the overarching purpose in both third party custody actions and dependency proceedings is to provide for the best interests of the children at issue. This purpose has primacy over all other rights of both the parents and intervenors.
The Blumes' primary goal of securing the best interests of the children will be adequately represented in the dependency proceeding by the children's guardian ad litem and DSHS. Because their secondary interest in gaining custody of the children is directly at odds with the goal of reunifying the family in the dependency proceeding, we hold that the Blumes, as petitioners in a pending third party custody action, may not intervene as a matter of right in the dependency of the Huddle children.
If an applicant does not satisfy the requirements of intervention as a matter of right, a court, in its discretion, may also allow a party to intervene when:
[A]n applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.[29]
Because we hold that the juvenile court properly allowed the Blumes to permissively intervene, we must address whether the same limits that apply to foster parent/intervenors in dependency proceedings should also apply to the Blumes as petitioners in a third party custody action. In limiting the role of foster parents in dependency proceedings, the court in In re Welfare of Coverdell, reasoned:
We appreciate the difficult position of the foster family and recognize the foster parent is motivated by sincere concern and affection for the child. However, a foster parent's adversarial participation in a dependency hearing has a tendency to shift the focus of the proceeding from the ability of the natural parent to care for the child to a comparison of the natural parent to the foster parent. Inevitably, it becomes an unequal battle since in most instances the natural parent's shortcomings have brought the matter to court in the first place. The fact the child may have certain advantages in another's home cannot be *1112 determinative of the court's decision.[30]
The rationale adopted by the court in Coverdell applies with equal force to third party custody petitioners who are permitted to intervene in dependency proceedings. Therefore, the trial court correctly ruled that the Blumes could not object to the agreed orders of dependency.
The Blumes next attempt to analogize their circumstances to the facts of In re Welfare of Hansen, in which the court held that the former guardians of the dependent child were denied due process by the juvenile court's refusal to hear evidence in support of the child's dependency (the juvenile court expressed an intent to unify the child with the natural mother and refused to hear evidence from the former guardians concerning the best interests of the child).[31] But in Hansen, the former guardians did not appeal the finding of dependency per se, but only the trial court's refusal to consider their evidence. In contrast, the Blumes do contest the finding of dependency in this case. Moreover, they have not identified any evidence they claim the trial court did not consider. The findings of fact in support of the orders of dependency include the salient facts regarding the Huddles' drug addition, the condition of their home at the time the Blumes removed the children, details concerning the children's sexual exposure, and the allegations of physical abuse. There was no error.
Finally, the Blumes argue that because their third party custody action was pending at the time the State petitioned for dependency, the juvenile court must defer a determination of dependency until the custody action is concluded. But RCW 13.04.030(1)(b) explicitly vests the juvenile court with exclusive original jurisdiction over all proceedings relating to children alleged or found to be dependent under RCW 13.34.030, and courts have consistently upheld this grant of authority.[32] We conclude that the trial court correctly stayed the custody action pending resolution of the dependency proceeding.
AFFIRMED.
WEBSTER and GROSSE, JJ., concur.
NOTES
[1] See also RAP 3.1.
[2] In re Welfare of Hansen, 24 Wash.App. 27, 35, 599 P.2d 1304 (1979); Sheets v. Benevolent and Protective Order of Keglers, 34 Wash.2d 851, 855, 210 P.2d 690 (1949).
[3] RCW 13.04.030(1)(b).
[4] RCW 13.34.030(5)(c).
[5] RCW 13.04.011(6).
[6] Davis v. Department of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999).
[7] Washington Fed'n of State Employees v. State Personnel Bd., 54 Wash.App. 305, 309, 773 P.2d 421 (1989).
[8] 113 Wash.2d 591, 781 P.2d 1308, 789 P.2d 306 (1989).
[9] Carver, 113 Wash.2d at 601-02, 781 P.2d 1308, 789 P.2d 306. Since Carver, the Washington Legislature has repealed the statutory custody scheme as between two parents and in its stead has adopted the Parenting Act of 1987. Under this system, neither parent has "custody" of a child to the exclusion of the other, but rather a parenting plan allocates when and how parenting responsibilities are divided between parents. The required designation of "custody" in parenting plans is only for the purposes of "all other state and federal statutes which require a designation[,]" but the designation does "not affect either parent's rights and responsibilities under the parenting plan." RCW 26.09.285.
[10] 78 Wash.App. 193, 896 P.2d 726 (1995).
[11] Kastanas, 78 Wash.App. at 200, 896 P.2d 726.
[12] 80 Wash.2d 242, 493 P.2d 775 (1972).
[13] Hanson, 80 Wash.2d at 247, 493 P.2d 775.
[14] Davis, 137 Wash.2d at 963, 977 P.2d 554.
[15] Davis, 137 Wash.2d at 963, 977 P.2d 554.
[16] Davis, 137 Wash.2d at 963, 977 P.2d 554.
[17] State v. Pesta, 87 Wash.App. 515, 521, 942 P.2d 1013 (1997).
[18] Pesta, 87 Wash.App. at 521, 942 P.2d 1013.
[19] RCW 13.34.010.
[20] RCW 13.34.020.
[21] RCW 13.34.020.
[22] RCW 13.34.020. See also In re Welfare of H.S., 94 Wash.App. 511, 973 P.2d 474, review denied, 138 Wash.2d 1019, 989 P.2d 1140 (1999), cert. denied, 529 U.S. 1108, 120 S.Ct. 1960, 146 L.Ed.2d 792 (2000) (parental rights terminated where child had been in foster care for six years since infancy and parents still not capable because of chronic mental illness).
[23] See also In re Dependency of K.R., 75 Wash. App. 781, 880 P.2d 88 (1994); In re Welfare of Baby Girl Coverdell, 30 Wash.App. 677, 637 P.2d 991 (1981) (in a dependency proceeding, the State initially attempts to reconstruct the family unit).
[24] RCW 13.34.145(8).
[25] 3A Lewis H. Orland & Karl B. Tegland, Washington Practice: Rules Practice CR 24 author's cmts. at 612 (4th ed.1992).
[26] In re Dependency of J.H., 117 Wash.2d 460, 471-72, 815 P.2d 1380 (1991); In re Welfare of Coverdell, 39 Wash.App. 887, 890, 696 P.2d 1241 (1984) (foster parents have no right to intervene and where granted permissive intervention, rights may not conflict with rights of legal parents).
[27] CR 24(a)(2).
[28] Dependency of J.H., 117 Wash.2d at 468, 815 P.2d 1380.
[29] CR 24(b)(2).
[30] Coverdell, 39 Wash.App. at 890-91, 696 P.2d 1241.
[31] Hansen, 24 Wash.App. at 37, 599 P.2d 1304.
[32] See In re Marriage of Perry, 31 Wash.App. 604, 644 P.2d 142 (1982) (superior court had authority to proceed with post-divorce custody modification upon express authority of juvenile court to proceed); In re Marriage of Rich, 80 Wash.App. 252, 907 P.2d 1234 (1996) (superior court had authority to enter final parenting plan in dissolution proceeding where juvenile court had previously dismissed dependency petition of mother as against the father because it was frivolous and an attempt to circumvent the custody battle in the dissolution action).