# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 83756-7-I |
| v. | UNPUBLISHED OPINION |
| SHANE MATHEW BROWN, | |
| Appellant. | |

DWYER, J. — Shane Brown appeals from two orders of the superior court prohibiting contact with his children, E.L.B. and Z.G. In a separate proceeding, E.L.B. and Z.G. were found to be dependent by the juvenile court, which entered a dispositional order pertaining to their visitation with Brown. The no-contact orders challenged here, which were imposed as a result Brown's convictions of domestic violence offenses that occurred in the children's presence, include an exception allowing for supervised visitation consistent with the juvenile court's dispositional order.

On appeal, Brown asserts that the no-contact orders are not reasonably necessary to further a compelling state interest because, he contends, the ongoing dependency action is sufficient to protect E.L.B. and Z.G. Thus, he argues, the orders impermissibly interfere with his constitutional right to parent. Brown further asserts that the sentencing court lacked jurisdiction to enter the no-

contact orders due to the ongoing dependency action pertaining to the children. Finding no error in the sentencing court's imposition of the orders, we affirm.

I

Shane Brown was convicted of domestic violence felony violation of a court order and interfering with domestic violence reporting. The domestic violence no-contact order that Brown was convicted of violating had been entered to protect Paula Goebel. Goebel and Brown have two children, E.L.B. and Z.G. The jury found that the conduct resulting in Brown's convictions occurred in the presence of the children. Thus, at sentencing, the superior court imposed no-contact orders prohibiting Brown from contacting E.L.B. and Z.G. for a period of five years.

Brown appealed from the judgment and sentence, asserting, among other claims of error, that the superior court erred by imposing the no-contact orders pertaining to E.L.B. and Z.G. without analyzing on the record the need for such orders and considering less restrictive alternatives. The State conceded error. In an unpublished opinion, we affirmed Brown's convictions but remanded to the superior court for reconsideration of the terms of the no-contact orders. State v. Brown, No. 80943-1-I (Wash. Ct. App. July 26, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/809431.pdf.

Before the cause returned to the superior court on remand, the State filed dependency actions as to E.L.B. and Z.G. The juvenile court entered a dispositional order regarding Brown's visitation with the children, which stated that Brown "shall have supervised visitation twice per week for 2 hours per visit

2

with the children, subject to a modification of the criminal no contact order such that [E.L.B and Z.G.] are no longer protected parties." The order further specified that visitation "shall only occur in a therapeutic setting."

On remand in this matter, Brown requested that the sentencing court decline to reimpose no-contact orders pertaining to E.L.B. and Z.G. Brown asserted that such orders would violate his constitutional right to parent and that, due to the pending dependency actions, the sentencing court lacked jurisdiction to enter no-contact orders regarding the children. Prior to ruling on Brown's motion, the court sought input from various individuals, including the juvenile court judge presiding over the dependency proceedings; Brown's domestic violence treatment provider; Goebel, the children's mother and the victim of the offenses; and the assistant attorney general representing the State in the dependency proceedings.

The sentencing court concluded that a no-contact order remained reasonably necessary "in light of the State's interest in protecting the children . . . from harm." The court reasoned that E.L.B. and Z.G. had been "directly exposed to the violence that [Brown] engaged in," given the jury's finding that the children had been present during the offenses. The sentencing court noted that Brown's engagement in court-ordered domestic violence treatment was "extraordinarily problematic," such that he had not "fully engaged in treatment for the very issue that caused the Court to issue a no contact order in the first place." The court additionally considered "the condition of the children," noting that one child had been diagnosed with posttraumatic stress disorder and had been "acting out in

3

violent and sometimes dangerous ways" and that the other child had been diagnosed with attention deficit hyperactivity disorder and was described as "very clingy." The court concluded that, given these considerations, a no-contact order remained "reasonably necessary" to protect the children from harm.

In an effort to "tailor the order in terms of scope and duration," the sentencing court ordered that the no-contact orders pertaining to E.L.B. and Z.G. would "track" the dispositional order of the juvenile court, such that the only contact permitted would be "pursuant to all of the requirements of the dependency order." Thus, the court stated in its oral ruling that contact shall occur only in "therapeutic settings" and only when fully supervised by a "culturally appropriate and trauma informed" provider. Consistent with the dispositional order, the court ordered that such visitation would occur "for a maximum of two times a week for two hours per visit." The sentencing judge stated: "I will modify my no contact order if [the dependency judge] modifies his conditions, and I will only do it then."

In written orders entered on February 3, 2022, the sentencing court ordered that Brown have no contact with E.L.B and Z.G. with the exception that he may engage in "supervised visits in a therapeutic setting . . . for 2 hours per week, provided that the visits must be arranged with a therapeutic visitation provider. Such therapeutic settings and visitation must comply with the terms of the dependency [actions]."[1]

---

[1] The juvenile court's dispositional order states that, "subject to a modification of the criminal no contact order," Brown "shall have supervised visitation twice per week for 2 hours per visit with the children." In order to "track" the dependency court's dispositional order, the sentencing court stated in its oral ruling that the only contact permitted between Brown and the

Brown appeals.

II

Brown first contends that the no-contact orders pertaining to E.L.B. and Z.G. are not reasonably necessary because the ongoing dependency actions are sufficient to protect the children from harm. Accordingly, he asserts, the orders impermissibly interfere with his constitutional right to parent. We disagree. Criminal sentencing serves a different purpose than do dependency proceedings, and the sentencing court's authority to impose crime-related prohibitions, including no-contact orders, is not circumscribed due to the ongoing nature of such proceedings. The sentencing court did not abuse its discretion by entering the no-contact orders pertaining to E.L.B. and Z.G.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, authorizes the superior court to impose "crime-related prohibitions" as a part of any sentence. State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008); RCW 9.94A.505(9). A "crime-related prohibition" is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). We review the imposition of sentencing conditions, including crime-related prohibitions, for an abuse of discretion. State v. Ancira, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001). The abuse of discretion standard applies even when crime-related prohibitions affect fundamental constitutional rights "because the imposition of [such] prohibitions is

---

children would occur "for a maximum of two times a week for two hours per visit." However, in the written no-contact orders, the court stated that supervised visits would be "allowed for 2 hours per week." Neither party addresses this discrepancy.

necessarily fact-specific and based upon the sentencing judge's in-person appraisal of the trial and the offender." In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010).

"Parents have a fundamental liberty interest in the care, custody, and control of their children." Ancira, 107 Wn. App. at 653 (citing Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)). Parental rights, however, are not absolute; the State has a compelling interest in preventing harm to children, including by protecting children from witnessing domestic violence. Rainey, 168 Wn.2d at 378 ("Washington law recognizes that the State has a compelling interest in protecting children from witnessing domestic violence."); State v. Letourneau, 100 Wn. App. 424, 439, 997 P.2d 436 (2000) ("Courts have recognized prevention of harm to children to be a compelling state interest."). Sentencing conditions that restrict the fundamental right to parent can be imposed so long as those conditions are reasonably necessary to further the state interest in preventing harm to children. Rainey, 168 Wn.2d at 374; Warren, 165 Wn.2d at 32. Such conditions must be "narrowly drawn," and there must be "no reasonable alternative way to achieve the State's interest." Warren, 165 Wn.2d at 34-35.

Here, the sentencing court determined that the challenged no-contact orders are reasonably necessary to further the state interest in preventing further harm to E.L.B. and Z.G. As sentencing conditions that impact the fundamental right to parent, the no-contact orders are valid if they are both crime-related and reasonably necessary to further the state interest in protecting the children. We

6

conclude that they are. Brown was convicted of committing domestic violence offenses and found by the jury of having committed those offenses in the presence of E.L.B. and Z.G. The no-contact orders imposed are thus directly related to the circumstances of the crime for which Brown was convicted. RCW 9.94A.030(10) (defining "crime-related prohibition"). Moreover, our state law recognizes that preventing children from witnessing domestic violence is a compelling state interest. Rainey, 168 Wn.2d at 378. The sentencing court additionally tailored the no-contact orders.[2] For these reasons, we conclude that the imposition of the no-contact orders was a proper exercise of the court's discretion.

Brown nevertheless asserts that the no-contact orders are not reasonably necessary to further the state interest of protecting E.L.B. and Z.G. given the juvenile court's dispositional order limiting contact between Brown and the children. According to Brown, the juvenile court's supervision of the ongoing dependency proceedings is sufficient to protect E.L.B. and Z.G. We disagree.

The purposes of no-contact orders imposed on criminal sentencing as opposed to dispositional orders imposed in a dependency matter are fundamentally different. No-contact orders serve to prevent further harm to the victims and witnesses of the crime of conviction. See, e.g., Warren, 165 Wn.2d at 34. Additionally, a no-contact order subjects the offender to further criminal charges if, as here, the offender violates the terms of the order. See RCW

---

[2] Brown does not argue that the no-contact orders imposed by the sentencing court are not sufficiently tailored, and neither party briefs this issue. Accordingly, we are not called on to decide it.

7

7.105.450(1), (4); former RCW 26.50.110(1), (4) (2019). In contrast, "[t]he primary purpose of a dependency is to allow courts to order remedial measures to preserve and mend family ties." In re Dependency of T.L.G., 126 Wn. App. 181, 203, 108 P.3d 156 (2005). Thus, the no-contact orders imposed by the sentencing court serve to protect E.L.B. and Z.G. from harm, while the dispositional order allows Brown to maintain a relationship with his children to promote future reunification. Moreover, an ongoing dependency proceeding does not obviate the need for no-contact orders when dependent children are the victims or witnesses of crime. Dependency proceedings may be dismissed for myriad reasons. When this occurs, a properly imposed no-contact order serves to protect children who have been the victims or witnesses of crime from further harm.

The no-contact orders imposed here are both crime-related and reasonably necessary to further the state interest in protecting E.L.B. and Z.G. from harm. Brown's assertion that the sentencing conditions are rendered unnecessary by virtue of the ongoing dependency proceedings is without merit. The sentencing court did not abuse its discretion in imposing the challenged orders.

III

Brown further asserts that the sentencing court was without jurisdiction to enter the no-contact orders pertaining to E.L.B. and Z.G. while the dependency actions pertaining to the children remained ongoing. Again, we disagree. Although our legislature has assigned to the juvenile court "proceedings" relating

to dependent children, RCW 13.04.030(1)(b), the criminal prosecution here is not such a proceeding. Because the SRA authorizes the imposition of the challenged no-contact orders, the sentencing court did not err by imposing those orders.

Our legislature, in creating the juvenile court, sought to "'distribute and assign a phase of the business of the superior court'" and to "'prescribe the mode of procedure by which the superior court shall initiate, process and apply the remedies made available.'" In re Dependency of E.H., 158 Wn. App. 757, 765, 243 P.3d 160 (2010) (internal quotation marks omitted) (quoting State v. Werner, 129 Wn.2d 485, 492-93, 918 P.2d 916 (1996)). To that end, the legislature enacted a statute providing that "the juvenile courts in this state shall have exclusive original jurisdiction over all proceedings" thereafter enumerated. RCW 13.04.030(1). As relevant here, the statute provides that "the juvenile courts in this state shall have exclusive original jurisdiction over all proceedings . . . [r]elating to children alleged or found to be dependent as provided in chapter 26.44 RCW and in RCW 13.34.030 through 13.34.161." RCW 13.04.030(1)(b).

Our legislature has additionally prescribed the authority of the superior court to impose punishment on individuals convicted of felony offenses. RCW 9.94A.505(1). Pursuant to the SRA, the superior court is authorized to impose "crime-related prohibitions" and "affirmative conditions" as part of any criminal sentence. RCW 9.94A.505(9). Crime-related prohibitions proscribe conduct "that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). No-contact orders imposed as part of a

criminal sentence are crime-related prohibitions. See, e.g., Rainey, 168 Wn.2d at 376; Warren, 165 Wn.2d at 32.

Here, Brown asserts that the superior court was without jurisdiction to impose the no-contact orders pertaining to E.L.B. and Z.G. because dependency proceedings pertaining to the children were ongoing. We disagree. Our legislature has assigned to the juvenile court "exclusive original jurisdiction over all *proceedings*" relating to children alleged or found to be dependent. RCW 13.04.030(1)(b) (emphasis added). The criminal prosecution of Brown, in which the no-contact orders were imposed, is not such a proceeding. Were it otherwise, the criminal action in which Brown was charged and convicted would have been required to be filed in the juvenile court. See Ledgerwood v. Lansdowne, 120 Wn. App. 414, 420, 85 P.3d 950 (2004) ("If [a court] has exclusive original jurisdiction, the action must be filed there and nowhere else."). Moreover, there is no indication that our legislature, in assigning dependency proceedings to the juvenile court, purported to divest the superior court of its statutory authority to sentence offenders consistent with the SRA.

Indeed, we have previously rejected the argument that the jurisdictional language of RCW 13.04.030 is so broad. See City of Seattle v. Shin, 50 Wn. App. 218, 748 P.2d 643 (1988). In Shin, a mother was charged with contributing to the dependency of a minor pursuant to Seattle Municipal Code § 12A.18.020. 50 Wn. App. at 219. She asserted on appeal that the code provision was preempted by state law because RCW 13.04.030 "lodges exclusive original jurisdiction in the juvenile courts for actions relating to dependent children under

10

RCW 26.44 and RCW 13.34.030-.170." Shin, 50 Wn. App. at 223-24. We

rejected the assertion that "all actions arising under these provisions [RCW 26.44

and RCW 13.34.030-.170] are exclusively lodged in juvenile court." Shin, 50 Wn.

App. at 224. Rather, we held that

> [t]he only action so lodged are those "[r]elating to children alleged
> or found to be dependent . . ." RCW 13.04.030(2).[3] That would
> include provisions which primarily relate to declaring dependency,
> removing dependent children from abusive environments, naming
> guardians, and the like.

Shin, 50 Wn. App. at 224 (alterations in original). We explained:

> RCW 26.44 provides for proceedings not directly relating to children
> found to be dependent. For example, RCW 26.44.063 relates to
> parents or others who inflict child abuse and provides for the
> issuance of temporary restraining orders "in any judicial
> proceeding" in order to enjoin abuse. Similarly, RCW 26.44.080
> provides for criminal proceedings against persons under a duty to
> report child abuse who fail to do so. These actions relate to adults
> who are either inflicting or charged with detecting child abuse.
> *They do not relate to children found to be dependent in the sense*
> *contemplated by RCW 13.04.030(2).*

Shin, 50 Wn. App. at 224-25 (emphasis added) (citation and footnotes omitted).

Thus, we held, a judicial proceeding does not "relate to children found to

be dependent" for purposes of the statute simply because the proceeding in

some manner involves dependent children. Shin, 50 Wn. App. at 224-25.

Instead, the proceedings referenced in RCW 13.04.030(1)(b) are those "which

primarily relate to declaring dependency, removing dependent children from

abusive environments, naming guardians, and the like." Shin, 50 Wn. App. at

224. Likewise, the criminal proceeding here is not a proceeding relating to

---

[3] Our opinion in Shin cites to RCW 13.04.030(2). See 50 Wn. App. at 225. That provision is now codified, as cited herein, at RCW 13.04.030(1)(b).

dependent children simply because the sentencing condition imposed prohibits the offender from contacting such children.

This conclusion is consonant with our discussion in Letourneau of the distinct roles of the criminal court and the family and juvenile courts. 100 Wn. App. at 443. There, the offender challenged on appeal a sentencing condition requiring that in-person contact with her minor children be supervised. Letourneau, 100 Wn. App. at 427. The record evidenced ongoing proceedings in the family court, including orders of that court that were potentially in conflict with orders entered by the criminal court. Letourneau, 100 Wn. App. at 443. We explained that our legislature "has provided more appropriate forums than the criminal sentencing process to address the best interests of dependent children with respect to most visitation issues." Letourneau, 100 Wn. App. at 443. We did not suggest, however, that the criminal court is divested of its sentencing authority by virtue of ongoing family or juvenile court proceedings. Rather, we articulated the distinction between the roles of those courts:

> It is the business of the criminal courts to protect minor children from being molested by convicted sex offenders by imposing appropriate conditions of community custody designed for that protective purpose. It is the business of the family and juvenile courts to address the best interests of minor children with respect to most other kinds of harm that could arise during visitation with a parent who has been convicted of a crime, including psychological harm that might arise from that parent's communications with the children regarding the crime.

Letourneau, 100 Wn. App. at 443. Thus, we addressed therein whether the sentencing court was authorized pursuant to the SRA to impose the challenged

no-contact orders—*not* whether the sentencing court had jurisdiction to impose such orders.

Brown nevertheless asserts that "the adult superior court must defer any proceedings involving contact with [a dependent] child until the dependency matter is resolved."[4]  The decisional authority that Brown cites, however, does not support his assertion that the sentencing court was without authority to enter the no-contact orders pertaining to E.L.B. and Z.G. here.  See In re Dependency of J.W.H., 106 Wn. App. 714, 24 P.3d 1105 (2001), reversed on other grounds, 147 Wn.2d 687, 57 P.3d 266 (2002); State v. Mora, 138 Wn.2d 43, 977 P.2d 564 (1999); In re Marriage of Perry, 31 Wn. App. 604, 644 P.2d 142 (1982).

In J.W.H., the aunt and uncle of three children who had been in their care filed a third party custody petition.  106 Wn. App. at 717-18.  While the custody action was pending, the children's parents and the State sought to enter agreed orders declaring the children dependent.  J.W.H., 106 Wn. App. at 719.  The juvenile court entered the orders against the objection of the aunt and uncle. J.W.H., 106 Wn. App. at 719.  On appeal, the aunt and uncle asserted that, because their custody action was pending when the State petitioned for dependency, the juvenile court was required to defer a dependency determination until the custody action was concluded.  J.W.H., 106 Wn. App. at 726.  We rejected that argument, holding that the family court had correctly stayed the custody action pending resolution of the dependency proceeding. J.W.H., 106 Wn. App. at 726-27.

---

[4] Br. of Appellant at 20.

Similarly, in Perry, Division Three addressed "whether the Superior Court had the authority to proceed with [a custody decree] modification proceeding while a dependency action involving the child was pending in juvenile court." 31 Wn. App. at 605. The court determined that, in enacting RCW 13.04.030, our legislature "intended to provide that matters of dependency should be handled exclusively and originally by the juvenile court and that the superior court defer determination of custody as between the parents in a dissolution proceeding until the juvenile court has made a determination of the dependency matter." Perry, 31 Wn. App. at 608. Because, there, the juvenile court had transferred the dependency action to the superior court, Division Three determined that the superior court could proceed with the petition to modify the custody decree. Perry, 31 Wn. App. at 608. The court reasoned that, if legal custody were granted to the parent not subject to the dependency action, the dependency could be terminated. Perry, 31 Wn. App. at 608.

The decision in neither J.W.H. nor Perry supports Brown's broad assertion that the superior court must, in any proceeding "involving contact with [a dependent] child," stay the matter until the dependency action is resolved.[5] Rather, those cases concerned simultaneous custody and dependency proceedings in which the family and juvenile courts could enter directly conflicting orders regarding the custody of a child.[6] Neither case suggests that, in enacting

---

[5] See Br. of Appellant at 20.
[6] In apparent recognition of the potential challenges resulting from the interrelatedness of proceedings in the family and juvenile courts, our legislature has provided for concurrent jurisdiction between those courts in some circumstances. RCW 13.04.030(2) ("The family court shall have concurrent original jurisdiction with the juvenile court over all proceedings under this section if the superior court judges of a county authorize concurrent jurisdiction as provided in

RCW 13.04.030(1)(b), our legislature purported to divest the criminal court of its authority to sentence an offender pursuant to the SRA, which includes the authority to impose a no-contact order prohibiting contact with the offender's child when the order is reasonably necessary to protect the child from further crime-related harm. See, e.g., Rainey, 168 Wn.2d at 374; Warren, 165 Wn.2d at 32.

Our Supreme Court's decision in Mora is similarly unsupportive of Brown's position. There, the 17-year-old defendant was initially charged with an offense that subjected him to the juvenile court act's automatic decline provision. Mora, 138 Wn.2d at 45. The State thereafter amended the information to charge offenses that would have brought the defendant under the jurisdiction of the juvenile court. Mora, 138 Wn.2d at 45. The defendant was nevertheless tried in the adult division of the superior court. Mora, 138 Wn.2d at 45. Our Supreme Court held that the court erred when it failed to remand the case to the juvenile court following amendment of the charges, reasoning that "[t]he legislative intent underlying the automatic decline provision is to impose more severe punishment on juveniles who have committed certain criminal offenses." Mora, 138 Wn.2d at 54. Here, there is no question that the adult division of the superior court had jurisdiction in the criminal proceeding against Brown. Mora is inapposite.

The juvenile court act provides that the juvenile court has exclusive original jurisdiction over "all *proceedings* . . . [r]elating to children alleged or found to be dependent." RCW 13.04.030(1)(b) (emphasis added). Contrary to Brown's

_____

RCW 26.12.010.); RCW 13.04.030(3) ("The juvenile court shall have concurrent original jurisdiction with the family or probate court over minor guardianship proceedings under chapter 11.130 RCW and parenting plans or residential schedules under chapter 26.09, 26.26A, or 26.26B RCW as provided for in RCW 13.34.155.").

15

suggestion, the criminal action in which he was convicted is not such a proceeding. Nowhere does the juvenile court act purport to divest the criminal court of its sentencing authority pursuant to the SRA, which includes, in appropriate circumstances, the authority to impose sentencing conditions prohibiting contact with dependent children. Brown's assertion that the superior court was without jurisdiction to enter the no-contact orders pertaining to E.L.B. and Z.G. is without merit.[7]

Affirmed.

_Dwyer, J._

WE CONCUR:

_Smith, C.J._  _Mann, J._

---

[7] Multiple dependency and criminal law practitioners filed an *amici curiae* brief in this matter, asserting, as did Brown, that the sentencing court was without jurisdiction to impose the no-contact orders pertaining to E.L.B. and Z.G. In their briefing, *amici* additionally note that Brown is an enrolled member of the Navajo Nation and, thus, that E.L.B. and Z.G. are "Indian children" pursuant to the Indian Child Welfare Act (ICWA). However, *amici* nowhere assert that ICWA is pertinent to the resolution of the issues presented in this appeal. Any such assertion would be without merit.

ICWA applies to all "'child custody proceeding[s],'" which include "'foster care placement,'" "'termination of parental rights,'" "'preadoptive placement,'" and "'adoptive placement.'" 25 U.S.C. § 1903(1). Thus, the "heightened protections of ICWA are triggered" only if the matter is a "child custody proceeding[]." In re Adoption of T.A.W., 186 Wn.2d 828, 844, 383 P.3d 492 (2016). Because the criminal proceeding at issue here is not a "child custody proceeding," 25 U.S.C. § 1903(1), ICWA does not apply.