[No. 38233-4-II.    Division Two.    February 9, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR C. RUSSELL, *Appellant*.

776

*Bryan G. Hershman*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton, Deputy*, for respondent.

¶1 BRIDGEWATER, J. — Arthur C. Russell appeals his conviction for first degree child rape—domestic violence. We hold that the trial court abused its discretion by admitting ER 404(b) evidence of other alleged sexual abuse of the victim without giving the jury a required limiting instruction. We reverse and remand.

FACTS

¶2 Russell met CR's[1] mother, Marilou, in 1993 when Russell was in the navy; the couple married in 1995. CR was born May 22, 1992, the youngest of Marilou Russell's five children. CR met Russell in the Philippines, her birthplace, when she was about two or three years old. After her mother married Russell, CR came to think of him as her father. CR did not know her biological father. When CR was growing up, they moved frequently because of Russell's military service. CR's mother worked and Russell would be at sea for six months at a time.

¶3 After Russell and Marilou married, the family moved to Japan from the Philippines. After two or three years there, they moved to Hawaii. They stayed in Hawaii for about three years, where CR attended kindergarten to second grade and CR was age six through eight or nine. CR testified that in Hawaii Russell began to caress her body all over with his hands. This occurred in their house, multiple times, and mostly in Russell's bedroom.

¶4 From Hawaii, the Russells moved to Bremerton just as CR was starting third grade. CR was about nine years old, and the family stayed in Washington until CR was in fifth grade. After they moved to Washington, Russell continued to touch CR and started to touch her orally. Russell made CR perform oral sex on him, and he also touched her vagina with his hands and mouth. CR testified that this occurred multiple times.

¶5 The family stayed in Washington for about three years, and then they moved to Florida. After they moved to Florida, the abuse escalated to multiple occurrences of penile-vaginal intercourse.

¶6 After two years in Florida, the family moved to Indiana, where the intercourse continued. CR did not report it because she did not want anything to happen to

---

[1] We use CR's initials to protect her privacy.

Russell. Nevertheless, CR eventually told her mother about the abuse while the family was living in Indiana. CR asked her mother not to call the police because she did not want Russell to get into trouble. After CR told her mother, CR's relationship with Russell became awkward, but the abuse stopped. Her mother never reported it.

¶7 Around 2006, the family moved from Indiana to Las Vegas. Russell moved out of the family home in the spring of 2007, and returned to Washington State. Russell and CR's mother began divorce proceedings.

¶8 Because of the divorce, CR's mother pressured CR to report the abuse. CR left home to stay with a friend and was ultimately placed in foster care. CR eventually reported the abuse to a school counselor. A social worker interviewed CR at her high school and she received counseling.

¶9 The State of Washington charged Russell by amended information in Kitsap County Superior Court with first degree rape of a child—domestic violence, regarding his alleged abuse of CR while the family lived in Bremerton. Before trial, the State sought to admit evidence under ER 404(b) of acts of abuse Russell committed against CR in Japan and Hawaii before the family moved to Washington, and of acts committed in Florida and Indiana after they left Washington State. The State alleged that Russell began abusing CR when she was three years old, while he was stationed in Japan. The abuse continued as the family moved to each new location. CR had no independent recollection of the abuse in Japan, but she did recall the abuse beginning in Hawaii. CR also recalled it happening in Washington and continuing in Florida, where there was an allegation of penile-vaginal penetration. CR also recalled abuse in Indiana, where she reported it to her mother, and thereafter it stopped.

¶10 Defense counsel agreed that some of the evidence was admissible, stating that both sides needed to discuss what happened in Indiana. Counsel was more concerned about the earlier incidents in Japan and Hawaii. He objected that CR had no independent recollection of the

events in Japan. He also expressed concern about whether CR was competent to testify about what had happened when she lived in Hawaii, due to her young age at that time. The defense therefore asked that the evidence of what occurred in Japan and Hawaii be excluded.

¶11 Defense counsel admitted that the evidence of penile penetration in Florida was relevant: "I concede it is somewhat probative." 1 Report of Proceedings (RP) at 19. He nevertheless argued that it should be excluded because it was more prejudicial than probative.

¶12 The State responded that it intended to focus on the events in Washington. Nevertheless, it pointed out that the evidence was relevant because it showed progression and grooming behavior. Russell went from touching and caressing in Hawaii, progressed to oral sex in Washington, and then to full penile-vaginal intercourse in Florida. The State argued that the evidence was corroborative and also showed Russell's "[lustful] disposition" toward CR.[2] 1 RP at 22.

¶13 The trial court excluded the evidence regarding events in Japan. It admitted the evidence regarding events in Hawaii, noting that defense counsel's concerns about competency in this time frame could be addressed at cross-examination. The trial court also admitted the Florida evidence, finding it relevant and not more prejudicial than probative.

¶14 At trial, CR testified to events as above described. She also testified that she never told her siblings about the abuse. She also explained why she had denied the allegations to her stepsister, Shanna LaMar, who was Russell's biological daughter from a prior marriage, stating that she told Shanna the allegations were untrue because she did not want anyone else to know about them, to protect both

---

[2] The record actually says "lawful disposition." 1 RP at 22. But it is clear from the context that either this is a typographical error or the deputy prosecutor merely misspoke. The State clearly meant that the proffered evidence showed Russell's *lustful* disposition.

Russell and herself. CR similarly testified that she told her sister-in-law, Kristine, that the allegations were not true.

¶15 CR's older sister, Kristal Russell, testified that she never actually saw Russell sexually abuse CR. However, she shared a room with CR and remembered that CR was often in Russell's bedroom with the door locked. This happened only with CR, and it occurred in Hawaii, Washington, Florida, and Indiana.

¶16 Russell's daughter, LaMar, testified on his behalf. LaMar said that she never saw Russell touch CR inappropriately.

¶17 Russell also testified at trial and denied ever touching CR inappropriately. The jury found Russell guilty as charged. Russell appeals.

## DISCUSSION

¶18 Russell argues that he was denied a fair trial by the trial court's admission of evidence of alleged sexual misconduct by Russell against CR before and after the acts in Washington for which he was charged. We agree.

█ █ ¶19 Interpretation of an evidentiary rule is a question of law, which we review de novo. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). When the trial court has correctly interpreted the rule, we review the trial court's decision to admit evidence under ER 404(b) for an abuse of discretion. *Foxhoven*, 161 Wn.2d at 174. Discretion is abused if it is exercised on untenable grounds or for untenable reasons. *Foxhoven*, 161 Wn.2d at 174. Failure to adhere to the requirements of an evidentiary rule can be considered an abuse of discretion. *Foxhoven*, 161 Wn.2d at 174.

█ ¶20 ER 404(b) prohibits a court from admitting "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." This prohibition encompasses not only prior bad acts and unpopular behavior but any evidence offered

to show the character of a person to prove the person acted in conformity with that character at the time of a crime. *Foxhoven*, 161 Wn.2d at 175.

¶21 ER 404(b) evidence may, however, be admissible for another purpose, such as proof of motive, plan, or identity. *Foxhoven*, 161 Wn.2d at 175. Relevant here, such evidence may also be admitted to show the defendant's "lustful disposition," that is, sexual desire for a particular victim. *State v. Ray*, 116 Wn.2d 531, 547, 806 P.2d 1220 (1991); *State v. Guzman*, 119 Wn. App. 176, 182, 79 P.3d 990 (2003) (citing *State v. Ferguson*, 100 Wn.2d 131, 134, 667 P.2d 68 (1983) (quoting *State v. Thorne*, 43 Wn.2d 47, 60-61, 260 P.2d 331 (1953))), *review denied*, 151 Wn.2d 1036 (2004). ER 404(b) is not designed to deprive the State of relevant evidence necessary to establish an essential element of its case, but rather to prevent the State from suggesting that a defendant is guilty because he or she is a criminal-type person who would be likely to commit the crime charged. *Foxhoven*, 161 Wn.2d at 175 (citing *State v. Lough*, 125 Wn.2d 847, 859, 889 P.2d 487 (1995)).

¶22 In this case, the evidence in question was offered and admitted to show the defendant's "[lustful] disposition." 1 RP at 22. While the admission of other acts evidence for such purpose may be appropriate, *see Ray*, 116 Wn.2d at 547, certain requirements must be met.

¶23 Before admitting ER 404(b) evidence, a trial court *must* (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect. *Foxhoven*, 161 Wn.2d at 175; *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002); *Lough*, 125 Wn.2d at 853. This analysis "must be conducted on the record." *Foxhoven*, 161 Wn.2d at 175 (citing *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986)). Moreover, "[i]f the evidence is admitted, a limiting instruction must be given to the jury." *Foxhoven*, 161 Wn.2d at 175 (citing

*Lough*, 125 Wn.2d at 864). The trial court gave no such instruction here.

¶24 Russell contends on appeal that none of the five requirements noted above are met. But as for challenges to evidentiary admissions, a party may assign error on appeal only on the specific ground of the evidentiary objection made at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). If the specific objection made at trial is not the basis of the appellant's argument before this court, the appellant has "lost [his] opportunity for review." *Guloy*, 104 Wn.2d at 422. At the ER 404(b) hearing, Russell made no objection to the admission of the other alleged acts based on insufficiency of the State's offer of proof, nor did he challenge the purpose for which the evidence was sought to be admitted, nor did he challenge the relevance of such evidence.[3] Accordingly, Russell's newly made arguments regarding those alleged errors are not properly before us. However, Russell did argue to the trial court that the admission of the evidence would be unduly prejudicial; thus Russell's challenges regarding the latter two *Foxhoven* requirements, which bear directly on prejudice, are properly before us.

¶25 Russell contends that the trial court abused its discretion in ruling that the evidence of other acts of sexual misconduct was more probative than prejudicial. ER 401 defines "relevant evidence" as evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *State v. Stenson*, 132 Wn.2d 668, 701-02, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Relevant evidence is admissible, ER 402, but may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

---

[3] These alleged evidentiary errors also are not "manifest errors affecting a constitutional right" that could be first raised on appeal under RAP 2.5(a)(3). *State v. WWJ Corp.*, 138 Wn.2d 595, 602, 980 P.2d 1257 (1999) (for error to be first raised on appeal under RAP 2.5(a)(3), it must be both manifest and truly of constitutional magnitude).

ER 403; *Stenson*, 132 Wn.2d at 702. A trial judge has wide discretion in balancing the probative value of evidence against its potentially prejudicial impact. *Stenson*, 132 Wn.2d at 702 (citing *State v. Rivers*, 129 Wn.2d 697, 710, 921 P.2d 495 (1996)).

¶26 Generally, courts will find that probative value is substantial in cases where there is very little proof that sexual abuse has occurred, particularly where the only other evidence is the testimony of the child victim. *State v. Sexsmith*, 138 Wn. App. 497, 506, 157 P.3d 901 (2007), *review denied*, 163 Wn.2d 1014 (2008). We review the trial court's balancing of probative value against prejudicial effect for abuse of discretion. *Sexsmith*, 138 Wn. App. at 506. While this standard of review is highly deferential, we note that the required balancing in sex cases is particularly delicate. "A careful and methodical consideration of relevance, and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, *where the prejudice potential of prior acts is at its highest.*" *State v. Saltarelli*, 98 Wn.2d 358, 363, 655 P.2d 697 (1982) (emphasis added). As noted, case law permits the evidence at issue here to be admitted for purposes of showing defendant's lustful disposition toward the victim. *Ray*, 116 Wn.2d at 547. Accordingly, we hold that the trial court's admission of the ER 404(b) evidence, standing alone, was not itself an abuse of discretion.

¶27 However, we apply our Supreme Court's recent articulation of the ER 404(b) evidence admission requirements in *Foxhoven*, which states that where such evidence is admitted, a limiting instruction "must be given to the jury." *Foxhoven*, 161 Wn.2d at 175. Notably, the cases from which this rule is derived place the burden of giving such instruction on the trial court. *See, e.g., Foxhoven*, 161 Wn.2d at 175; *Lough*, 125 Wn.2d at 864 (noting that because the trial court repeatedly gave a limiting instruction to the jury at the conclusion of trial and before each witness in question testified, the record failed to support a contention that the jury used the ER 404(b) evidence for an

improper purpose, as the limiting instruction was given clearly and repeatedly and a jury is presumed to follow the trial court's instructions); *see also Lough*, 125 Wn.2d at 860 n.18 (citing *State v. Brown*, 113 Wn.2d 520, 529, 782 P.2d 1013, 787 P.2d 906 (1989), for the proposition that the trial court should explain the purpose of the evidence and give a cautionary instruction to consider it for no other purpose); *Brown*, 113 Wn.2d at 529 (citing *Saltarelli*, 98 Wn.2d at 362 (citing *State v. Goebel*, 36 Wn.2d 367, 378-79, 218 P.2d 300 (1950))); *Goebel*, 36 Wn.2d at 379 ("the court should state to the jury whatever it determines is the purpose (or purposes) for which the evidence is admissible; and it should also be the court's duty to give the cautionary instruction that such evidence is to be considered for no other purpose or purposes"); *State v. Whalon*, 1 Wn. App. 785, 794, 464 P.2d 730 (citing *Goebel*, 36 Wn.2d 367), *review denied*, 78 Wn.2d 992 (1970).

¶28 The State cites to *State v. Myers*, 133 Wn.2d 26, 36, 941 P.2d 1102 (1997), for the general rule that the trial court's failure to give a cautionary instruction is not error if no instruction was requested. But *Myers* does not mention ER 404(b) or address the circumstance here,[4] and we find *Foxhoven* to be controlling on this issue.

¶29 We have previously acknowledged the trial court's obligation to give a cautionary instruction. In *State v. Murphy*, 44 Wn. App. 290, 295, 721 P.2d 30, *review denied*, 107 Wn.2d 1002 (1986), we noted that our Supreme Court's directive in *Saltarelli*, 98 Wn.2d at 361-62 (citing *Goebel*, 36 Wn.2d 367) required the trial court to give a cautionary instruction, but we disregarded the trial court's failure to do so in that circumstance because "we believe[d] the outcome of the trial would not have been materially affected." *Murphy*, 44 Wn. App. at 295. That is not the case here.

---

[4] *Myers* is further distinguishable because the defense explicitly withdrew its objection to the admission of the videotape evidence in question and, therefore, failed to preserve for appeal any issue regarding admission of the evidence. *Myers*, 133 Wn.2d at 35-36.

¶30 The absence of a limiting instruction has particular impact in this case. In closing argument the State drew attention to Russell's alleged history of sexual abuse of CR, noting that his "behavior escalated from touching in Hawaii to oral sex in Washington to intercourse in Florida." 3 RP at 388. Moreover, the trial court instructed the jury that "[i]n order to decide whether any proposition has been proved, you must consider all of the evidence that I have admitted that relates to the proposition." 3 RP at 379 (Instruction 1). Accordingly, the jury was *required* to consider the other acts evidence when determining Russell's guilt on the charged offense. Under these circumstances we cannot say that the absence of a limiting instruction did not affect the outcome of the trial. We hold that given the facts of this case the trial court abused its discretion in failing to give a limiting instruction regarding the ER 404(b) evidence of Russell's alleged sexual abuse of CR occurring before and after the alleged crime in Washington for which he was charged. Accordingly, we reverse Russell's conviction and remand for a new trial.[5]

¶31 Reversed and remanded.

HOUGHTON and HUNT, JJ., concur.

Review granted at 169 Wn.2d 1006 (2010).

---

[5] We recognize that the legislature passed RCW 10.58.090(1) in 2008, which states in relevant part, "In a criminal action in which the defendant is accused of a sex offense, evidence of the defendant's commission of another sex offense or sex offenses is admissible, notwithstanding Evidence Rule 404(b), if the evidence is not inadmissible pursuant to Evidence Rule 403." The evidence may arise from a charged or uncharged sex offense. *See* RCW 10.58.090(4), (5). Because this exception to ER 404(b) went into effect June 12, 2008, after the verdict in Russell's trial, and because the parties do not argue that it applies here, we conclude that RCW 10.58.090 has no impact upon the present appeal. *See State v. Kennealy*, 151 Wn. App. 861, 887 n.7, 214 P.3d 200 (2009) (so noting).

We further note that while RCW 10.58.090 will be available on remand, *see* LAWS OF 2008, ch. 90, § 3, its operation on the threshold issue of admissibility of other acts evidence has no impact upon the postadmission requirement that our Supreme Court has placed upon the trial court to give a limiting instruction if such evidence is admitted. *See Foxhoven*, 161 Wn.2d at 175.