[No. 28495-6-III.  Division Three.  March 8, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE R. VELIZ, JR., *Appellant.*

*George P. Trejo Jr.* (of *The Trejo Law Firm*), for appellant.

*Shawn P. Sant, Prosecuting Attorney,* and *David W. Corkrum* and *Maureen R. Lorincz, Deputies,* for respondent.

¶1 SIDDOWAY, J. — Jose R. Veliz Jr. appeals his conviction for custodial interference in the first degree, imposed after he took his four-year-old daughter out of the country for four months in violation of his wife's rights under an order for protection. He challenges his conviction on the basis that an order for protection does not constitute a "court-ordered parenting plan" within the meaning of the statute establishing felony custodial interference; that even if such an order constitutes a court-ordered parenting plan, the order was improperly completed and cannot support the conviction; and that the evidence was insufficient to convict him of the offense for the charging period identified in the information. He also argues that the trial court committed reversible error in admitting irrelevant and unduly prejudicial evidence.

¶2 We conclude that the term "court-ordered parenting plan" as used in RCW 9A.40.060(2) encompasses any valid

court order that establishes a minor child's parents' rights to residential placement and/or visitation, including the order for protection in this case. The evidence sufficed to establish that Mr. Veliz committed the offense during the charging period and the trial court did not abuse its discretion in admitting the challenged evidence. We therefore affirm the conviction.

## FACTS AND PROCEDURAL BACKGROUND

¶3 Jose R. Veliz Jr. and Lorena Velasco were in a relationship for approximately seven years, beginning in 2001. They have a daughter, NV, who was born in January 2004. They later married in 2006 but separated in April 2008.

¶4 At the time of their separation, Ms. Velasco applied for an order for protection against Mr. Veliz under RCW 26.50.020. We have no record from those proceedings other than the order for protection itself. Although the order recites that Ms. Velasco alleged domestic violence, its terms were largely addressed to sorting out residency, property, and visitation issues between the parties. Ms. Velasco's petition was heard by the superior court on May 5, 2008, with both Ms. Velasco and Mr. Veliz in attendance. The order entered at the conclusion of the hearing was prepared using a standard order for protection form, which includes some required and some optional provisions, as well as room for handwritten detail or modification. *See* RCW 26.50.035(1). Some handwritten terms had been added to the order prior to the hearing and others were added by the court. The order was signed by Ms. Velasco, the judge, and Mr. Veliz, acknowledging his receipt of a copy.

¶5 Most of the preprinted terms of the order are preceded by a box in the left-hand margin. Nothing on the order explains the significance of the boxes, although the implication to someone familiar with such forms is that the boxes are marked to indicate which terms of the order apply in a given matter. In the case of the May 5 order, however, it appears on the face of the order that this convention was

not followed. Boxes next to some terms are marked. Boxes next to many other terms are not marked, even though a number of these terms are marked internally or have been completed with handwritten detail and bear the initials of the judge. One of the terms whose marginal box is unmarked has been stricken through with hash marks, suggesting that it alone is intended to be excluded as a term.

¶6 Among terms significant in this case are that NV is identified as a minor child in a table on the first page of the order. The box preceding the term numbered 2 is marked, and reads as follows:

☑ 2. Respondent is **Restrained** from coming near and from having any contact whatsoever, in person or through others, by phone, mail, or any means, directly or indirectly, except for mailing or service of process of court documents by a 3rd party or contact by Respondent's lawyer(s) with ☑ petitioner ☑ the minors named in the table above ☐ these minors only:

If both parties are in the same location, respondent shall leave.

Clerk's Papers (CP) at 36. The box preceding the term numbered 12 is unmarked but an interior box is marked, causing the term to read as follows:

☐ 12. Petitioner is Granted the temporary care, custody, and control of ☑ the minors named in the table above ☐ these minors only:

CP at 37. Finally, the box preceding the term numbered 15 is unmarked but the space reserved for handwritten terms is completed and initialed "RGS," the initials of the judge. The full term reads as follows, with italicized text indicating the handwritten portion:

☐ 15. The respondent will be allowed visitations as follows: *Weekends Saturdays & Sundays or in accordance with a court approved parenting plan. Sat & Sunday Sat from 10 am to Sunday at 5 pm.*

*RGS*

Petitioner may request modification of visitation if respondent fails to comply with treatment or counseling as ordered by the court.

*Id.* Ms. Velasco understood these terms to give Mr. Veliz visitation rights to see NV only at the indicated time on weekends, which he exercised without incident in May, June, and July.

¶7 Mr. Veliz filed for divorce shortly after entry of the order for protection. An order approving a parenting plan was entered thereafter, but not until August 25, 2008. It, too, provided for weekend-only visitation for Mr. Veliz, from Saturday at 10 a.m. to Sunday at 5 p.m. CP at 26.

¶8 On the weekend of August 16 and 17, 2008, Mr. Veliz picked up NV on Saturday as usual. He did not return her by Sunday at 5 p.m. At approximately 6 p.m., Ms. Velasco called the police. Over the next couple of weeks, officers visited Mr. Veliz's place of employment, his parents, and one of his close friends, but were unable to determine his whereabouts. On August 22 he was charged by information with custodial interference in the first degree under RCW 9A.40.060(2)(a). The information charged that Mr. Veliz,

> during the time intervening between the 16th day of August, 2008, and the 17th day of August, 2008, then and there, being the parent of and with intent to deny access from Lorena [Velasco], the other parent having the lawful right to time with N.V. pursuant to a court ordered parenting plan, did retain N.V., a child under eighteen years of age, and intended to hold N.V. permanently or for a protracted period.

CP at 24. Police reported NV as a missing child to a national registry and obtained a nationwide warrant for Mr. Veliz's arrest.

¶9 It was later determined that Mr. Veliz had taken NV to Los Angeles and thereafter to Mexico. He claimed that his purpose in traveling to Mexico was so that he and NV could meet Ms. Velasco's family. During his time in Mexico, neither he nor NV ever contacted Ms. Velasco. Ms. Velasco testified that she never heard from any family members in Mexico during the four months that Mr. Veliz and her daughter were gone and disputed that her parents and grandparents, whom Mr. Veliz claims to have visited, were even alive.

¶10 Mr. Veliz did not return to the United States with NV until December 18, 2008. When he crossed the border he was arrested. At the time of his arrest, Mr. Veliz had in his possession not only valid identification, but an additional identification card in the name "Joel Rodriguez," which was seized. NV was returned to her mother in Pasco by authorities on December 21, 2008.

¶11 Prior to trial, Mr. Veliz filed a *Knapstad*[1] motion, arguing that the order for protection entered on May 5, 2008 did not constitute a court-ordered parenting plan under chapter 26.09 RCW, dealing with marriage dissolution proceedings, and that he therefore could not be guilty of custodial interference as a matter of law. The August 22 information had never been amended to address violation by Mr. Veliz of the August 25 parenting plan entered in the dissolution action. Mr. Veliz also argued that the term numbered 15 in the protective order, pertaining to visitation, was not a part of the order because the box preceding it in the left-hand margin was not marked.

¶12 The trial court denied the motion, concluding that the term "court-ordered parenting plan" used in RCW 9A.40.060(2) is not limited to temporary or permanent parenting plans under chapter 26.09 RCW and, construing all inferences in the light most favorable to the State, that a reasonable jury could find that the order for protection was a court-ordered parenting plan and created binding weekend visitation limitations on Mr. Veliz notwithstanding the parties' or the court's failure to check the box preceding the visitation term.

¶13 In cross-examining Mr. Veliz at trial, the State questioned him about his use of the name "Joel Rodriguez" and his possession of identification bearing that name seized from him at the border. The defense objected to the evidence, arguing that because the State had no evidence that Mr. Veliz ever used the name or identification for an improper purpose, the evidence was irrelevant and unduly

---

[1] *State v. Knapstad,* 107 Wn.2d 346, 729 P.2d 48 (1986).

prejudicial. The court overruled the objection, allowing the evidence as "probative evidence regarding [Mr. Veliz's] intent, as well as potential evidence of flight." Report of Proceedings (RP) at 95.

¶14 A jury found Mr. Veliz guilty of the custodial interference charge. He appealed, renewing his challenges to the State's evidence raised in his *Knapstad* motion and arguing that the court erred in its admitting evidence of the identification card seized from him at the border.

## ANALYSIS

### I

¶15 Mr. Veliz argues that the evidence presented was insufficient to prove the offense of custodial interference in the first degree because the May 5, 2008 order for protection is not a "court-ordered parenting plan"—a required element under RCW 9A.40.060(2)—as a matter of law. Br. of Appellant at 21-22.

¶16 We review questions of statutory construction de novo. *City of Spokane v. Spokane County*, 158 Wn.2d 661, 672-73, 146 P.3d 893 (2006). When interpreting a statute, the court's fundamental objective is to ascertain and carry out the legislature's intent. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). To determine that intent, we first look to the language of the statute. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). In determining the plain meaning of a provision, we look to the text of the statutory provision in question as well as "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Jacobs*, 154 Wn.2d at 600. If, after this inquiry, the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we "may resort to statutory construction, legislative history, and relevant case law" to resolve the ambiguity. *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007). If the statute remains ambiguous after both attempting to deter-

mine the plain meaning and resorting to tools of statutory construction, we then employ the rule of lenity and interpret ambiguities in favor of the criminal defendant. *In re Pers. Restraint of Sietz*, 124 Wn.2d 645, 652, 880 P.2d 34 (1994); *see also State v. Coria*, 146 Wn.2d 631, 639, 48 P.3d 980 (2002).

¶17 The statute establishing felony custodial interference provides in relevant part that "[a] parent of a child is guilty of custodial interference in the first degree if the parent takes . . . the child, with the intent to deny access, from the other parent having the lawful right to time with the child *pursuant to a court-ordered parenting plan.*" RCW 9A.40.060(2) (emphasis added). The term "parenting plan" is not defined in the criminal code, nor does the criminal statute refer to the domestic relations title or the dissolution chapter of the Washington code. The term "parenting plan" is used in the domestic relations title of the Washington code, however, and the legislative history is clear that the 1994 amendment adding "parenting plan" language to RCW 9A.40.060 was the result of changes made to chapter 26.09 RCW, dealing with dissolution proceedings and legal separation.[2] FINAL B. REP. on H.B. 2333, 53d Leg., Reg. Sess. (Wash. 1994); *State v. Pesta*, 87 Wn. App. 515, 942 P.2d 1013 (1997), *review denied*, 135 Wn.2d 1002 (1998). Mr. Veliz argues that the term must be construed to accord with chapter 26.09 RCW.

¶18 "Parenting plan" is not a defined term in chapter 26.09 RCW, but "permanent parenting plan" and "temporary parenting plan" are. The meaning of "parenting plan" shared by the two defined terms is a plan for parenting a

---

[2] Prior to the amendment, former RCW 9A.40.060(2) (1984) read as follows:

"A parent or other person acting under the directions of the parent is guilty of custodial interference in the first degree if the parent or other person intentionally takes, entices, retains, or conceals a child, under the age of eighteen years and for whom no lawful custody order has been entered by a court of competent jurisdiction, from the other parent with intent to deprive the other parent from access to the child permanently or for a protracted period."

child. *See* RCW 26.09.004(3), (4).[3] Otherwise, the defined terms are different. RCW 26.09.194(2) provides that a "temporary parenting plan" shall include (1) a schedule for the child's time with each parent; (2) designation of the child's temporary residence; (3) allocation of decision-making authority for the child; (4) provisions for temporary support; and (5) restraining orders, if applicable. RCW 26.09.184(2) provides that the "permanent parenting plan" shall contain "provisions for resolution of future disputes between the parents, allocation of decision-making authority, and residential provisions for the child."

¶19 An argument similar to that advanced by Mr. Veliz was addressed by Division One of this court in *Pesta*, 87 Wn. App. 515. In that case the defendant was likewise convicted of custodial interference in the first degree, but unlike Mr. Veliz, Ms. Pesta was charged with violating both a temporary order of visitation entered before she took her child as well as a court-ordered temporary parenting plan entered thereafter, while she was concealing her child out of state. Like Mr. Veliz, she argued that the initial visitation order was not a "court-ordered parenting plan" at all. She argued that the court-ordered temporary parenting plan later entered did not include all of the provisions required by RCW 26.09.194(2) and its violation therefore could not be the basis for an offense. In affirming the defendant's conviction, the court elected to rely solely on the court-ordered temporary parenting plan, thereby distinguishing the violation it examined from the violation charged in our case. Nonetheless, much of its well-reasoned analysis of the relationship between the custodial interference statute and marriage dissolution provisions applies.

¶20 In light of the undefined meaning of "parenting plan" in the custodial interference statute, the *Pesta* court looked to RCW 9A.04.020, which sets forth the purposes

---

[3] We cite to the current subsections. The 2009 amendments to RCW 26.09.004 required alphabetizing of the definitions, renumbering subsection (1) as subsection (4) and subsection (2) as subsection (3).

and principles of construction applicable to the Washington criminal code. RCW 9A.04.020(2) states:

> The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title.

One of the express purposes of the criminal code set forth at RCW 9A.04.020(1)(a) is "[t]o forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests." With the context of the custodial interference statute, its history, and this purpose and principle of construction in mind, the *Pesta* court concluded that "the Legislature's purpose was to criminalize a parent intentionally depriving the other parent of the right to time with their child," and that "[t]he proscribed conduct is one parent depriving the other parent of the right to time with the child." 87 Wn. App. at 522. It rejected the argument that the State must prove violation of a parenting plan that is fully compliant with the marriage dissolution chapter, because to do so would require the State to prove the existence of terms having nothing to do with the right to time with the child—an interpretation of the criminal provision that it characterized as "at best . . . strained." *Id.* at 523. We agree.

¶21 The May 5 order for protection that Mr. Veliz is charged with violating is one step further removed from the parenting plans required in a dissolution proceeding than was the temporary parenting plan in *Pesta*. The order for protection at issue here was entered pursuant to chapter 26.50 RCW, dealing with domestic violence prevention, before any dissolution proceeding was filed. We nonetheless find that it, too, qualifies as a "parenting plan" within the meaning of the custodial interference statute.

¶22 Provisions of chapter 26.50 RCW recognize that parents rely on orders for protection to address the same residential placement and visitation issues addressed by chapter 26.09 RCW. RCW 26.50.060, for example, provides:

> (1) Upon notice and after hearing, the court may provide relief as follows:

. . . .

> (d) On the same basis as is provided in chapter 26.09 RCW, the court shall make residential provision with regard to minor children of the parties. However, *parenting plans as specified in chapter 26.09 RCW* shall not be required under this chapter.

(Emphasis added.) If a dissolution action is later filed by a parent who is a party to an order for protection under the domestic violence provisions, the order for protection may be consolidated under the dissolution action and cause number. RCW 26.50.025(2). Notably, while RCW 26.50-.060(1)(d) explicitly provides that placement and visitation terms in an order for protection need not be a "parenting plan[ ] as specified in chapter 26.09 RCW," a later provision of the domestic violence chapter nonetheless characterizes them as a parenting plan. RCW 26.50.220 addresses the fact that under other laws—federal tax law, for example[4]—a designation of determination of custody might be required, and states that "a *parenting plan* shall designate the parent with whom the child is scheduled to reside a majority of the time as the custodian of the child," thereby recognizing that parenting plans may be provided by orders entered under chapter 26.50 RCW. (Emphasis added.)

¶23 Accordingly, a court-ordered parenting plan may, but need not, be a parenting plan as specified in chapter 26.09 RCW. The fair import of the custodial interference provision, consistent with the purpose of the criminal code, includes all court-ordered parenting plans. The trial court did not err in denying Mr. Veliz's motion to dismiss.

## II

¶24 Mr. Veliz argues that even if we conclude that proof of an order for protection may satisfy the required element

---

[4] *E.g.*, 26 U.S.C. § 152(e), addressing which parent of a dependent child may claim a federal tax exemption for the child when the parents are divorced, legally separated, or have been living apart for a prescribed period.

of a court-ordered parenting plan, the order for protection in this case was deficient because of the manner in which it was completed.

¶25 The existence of an order is an element of the crime of violating such an order that must be found by a jury as a matter of fact. *State v. Miller*, 156 Wn.2d 23, 24, 123 P.3d 827 (2005). However, the validity of an order is not; it is a question of law appropriately within the province of the trial court to decide as part of the court's gatekeeping function. *Id.* The trial judge should not permit an invalid, vague, or otherwise inapplicable order to be admitted into evidence. *Id.* The nature of Mr. Veliz's challenge to his conviction because of the form of the order is not clear; he cites no authority.[5] He did not challenge the admissibility of the order, however, and therefore evidently does not challenge its validity. He appears instead to challenge its sufficiency to support the jury's verdict, arguing:

> The only proper interpretation of this mandatory form is that by failure to check off Paragraph 15., that the court made no provisions for visitation, thus there was no "court ordered parenting plan" that could have been violated by Mr. Veliz as of August 16, 2008, and August 17, 2008.

Br. of Appellant at 33.

¶26 In reviewing a defendant's challenge to the sufficiency of the evidence we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt. *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Substantial evidence means evidence in the record of a sufficient quantity to persuade a

---

[5] We remind counsel that we need not consider arguments that are unsupported by authority. RAP 10.3(a).

fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

¶27 The preprinted portion of term number 15, which Mr. Veliz argues on appeal is not a term of the order, states, "The respondent will be allowed visitation as follows . . . ." CP at 37. That language is followed by space within which the parties or the court can fill in a particular respondent's visitation rights. When cross-examined about the order for protection, Mr. Veliz admitted that he believed the superior court had made and initialed the handwritten entry "Sat-[urday] from 10 am to Sunday at 5 pm" in the space provided at term number 15. RP at 86-87. Mr. Veliz agreed, in response to questioning by the prosecutor, that term number 15 "gave me time with my daughter." *Id.* at 87. Mr. Veliz asserted only that "I didn't interpret [it] to be a visitation order." *Id.* The position that term number 15 is not a term of the order at all is therefore a position argued by counsel, but is not the position testified to by Mr. Veliz.

¶28 In addition to acknowledging his presence at the hearing on the order for protection and his belief that the superior court completed term number 15, Mr. Veliz admitted that he adhered to the prescribed visitation schedule during May, June, and July 2008. *Id.* at 88. His claim of insufficient evidence also admits the truth of the State's evidence, offered through Ms. Velasco, that term number 15 was completed by the superior court to dictate Mr. Veliz's right to visitation. From this evidence—and the fact that but for term number 15 of the order for protection, term number 2 would have given Mr. Veliz no visitation at all with NV[6]—there was sufficient evidence from which the jury could find that term number 15 was not excluded as a term of the order for protection.

---

[6] Term number 2, which was marked, restrained Mr. Veliz from "coming near and from having any contact whatsoever" with the minors named in the order. CP at 36.

III

■ ¶29 Mr. Veliz next argues that the jury could not have found that he committed the crime during the charging period of "the time intervening between the 16th day of August, 2008, and the 17th day of August, 2008" because, he contends, the evidence establishes that he was entitled to visitation with NV during that time period. In order for the jury to convict Mr. Veliz of custodial interference in the first degree, the State had to prove that the other parent had the lawful right to time with the child pursuant to a court-ordered parenting plan during the charging period. CP at 15 (Instruction 6); RCW 9A.40.060(2); *see State v. Boss*, 144 Wn. App. 878, 884, 184 P.3d 1264 (2008), *aff'd*, 167 Wn.2d 710, 223 P.3d 506 (2009).

¶30 The State was required to prove that some of Mr. Veliz's acts in committing the offense occurred in the state of Washington, which may be why the charging period— selected at a time when his movements were unknown— encompassed the day when he picked NV up for his week-end visitation. But while Mr. Veliz had the lawful right to time with her for much of the two-day charging period, the jury was presented with substantial evidence that it was Ms. Velasco who had the lawful right to time with NV after 5 p.m. on Sunday, August 17. The order for protection admitted into evidence specified that Mr. Veliz's visitation with NV ended on Sundays at 5 p.m. Ms. Velasco testified that Mr. Veliz was supposed to have returned NV at 5:00 in the afternoon on August 17, that he did not, and that after waiting for an hour, she called the police. Testimony at trial indicated that Mr. Veliz retained NV, that he left the state of Washington with her, and that Ms. Velasco did not see her daughter again for almost four months. From this, a fair-minded, rational jury could have found that Mr. Veliz committed the crime charged during the charging period.

IV

¶31 Finally, Mr. Veliz challenges the trial court's denial of his counsel's objection to evidence of his use of the name Joel Rodriguez and the identification card seized at the border. Defense counsel objected to the evidence as irrelevant under ER 401 and prejudicial under ER 403. The prosecutor responded that the evidence was relevant to the fact that Mr. Veliz took flight with his daughter for four months. The trial court overruled the defense objection, allowed the examination, and admitted the evidence. On appeal, Mr. Veliz argues that an ER 403 balancing analysis should have been done on the record and argues for the first time that the trial court committed reversible error by failing to give a limiting instruction, relying on *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007) and *State v. Russell*, 154 Wn. App. 775, 782, 225 P.3d 478, *review granted*, 169 Wn.2d 1006 (2010).

¶32 The decision to admit evidence lies within the sound discretion of the trial court and will not be overturned on appeal absent a manifest abuse of discretion. *State v. Magers*, 164 Wn.2d 174, 188, 189 P.3d 126 (2008); *State v. Bourgeois*, 133 Wn.2d 389, 399, 945 P.2d 1120 (1997) (citing *State v. Crenshaw*, 98 Wn.2d 789, 806, 659 P.2d 488 (1983)). A trial court abuses its discretion when it exercises its discretion on untenable grounds or for untenable reasons, or where its discretionary act was manifestly unreasonable. *In re Estate of Stevens*, 94 Wn. App. 20, 29, 971 P.2d 58 (1999).

¶33 Use of an alias may be proved or referred to by the State if the alias or other name is relevant and material to prove or disprove any of the issues in the case. *State v. Cartwright*, 76 Wn.2d 259, 264, 456 P.2d 340 (1969). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "Although rel-

evant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. The process of weighing probative value against prejudicial effect "is necessarily a matter addressed to the discretion of the trial court." *State v. Chase*, 59 Wn. App. 501, 507-08, 799 P.2d 272 (1990). A court need not state its ER 403 analysis on the record. *State v. Gould*, 58 Wn. App. 175, 184, 791 P.2d 569 (1990); *see also Carson v. Fine*, 123 Wn.2d 206, 222-26, 867 P.2d 610 (1994) (recognizing that the court's balancing of probative value and prejudicial effect need not be made on the record in the case of an ER 403 objection).[7]

¶34 Among the elements of the custodial interference offense that the State was required to prove were that in retaining NV, Mr. Veliz "acted with the intent to deny [Ms. Velasco] access to the child," and that he "intended to hold the child permanently or for a protracted period of time." CP at 16 (Instruction 7). Mr. Veliz denied any such intent, attributing his four-month absence and failure to communicate to a misunderstanding and to having no contact information for Ms. Velasco. As recognized by the trial court, Mr. Veliz's possession of false identification had a tendency to make the existence of intentional concealment and denial of access more likely, since it could decrease Mr. Veliz's likelihood of apprehension. The court did not abuse its discretion in allowing the evidence.

¶35 Mr. Veliz never requested a limiting instruction as to the evidence. His failure to request a limiting instruction at trial waives any right to assign error to the court's failure to give it. *State v. Williams*, 156 Wn. App. 482, 492, 234 P.3d 1174 (citing *State v. Stein*, 140 Wn. App. 43, 70, 165 P.3d 16 (2007)), review denied, 170 Wn.2d 1011 (2010). The decision in *Russell*, 154 Wn. App. 775, relied upon by Mr.

---

[7] Appellant's brief also includes arguments based on ER 404(b) but Mr. Veliz did not rely on ER 404(b) as a basis for his objection below. A party who objects to evidence on one ground does not preserve unraised grounds for review. *See State v. Mason*, 160 Wn.2d 910, 933, 162 P.3d 396 (2007) (defendant's objection at trial solely on relevancy grounds did not preserve an ER 404(b) challenge on appeal), *cert. denied*, 553 U.S. 1035 (2008).

Veliz, involves the need for a limiting instruction where an objection is made to evidence of prior bad acts under ER 404(b) and the evidence is admitted for one of the purposes identified by the rule. That objection was not made, and the issue is not present in this case.

¶36 We affirm the conviction.

KORSMO, A.C.J., and BROWN, J., concur.

Review granted at 171 Wn.2d 1028 (2011).