

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68958-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| STEVEN MIKEAL SOMMER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 13, 2014 |
| | ) | |

LEACH, C.J. — In this prosecution for acts of domestic violence, Steven Sommer appeals convictions for felony harassment, felony violations of a court order, and malicious mischief. Because the evidentiary errors he asserts on appeal were not preserved and because he demonstrates no basis for reviewing them for the first time on appeal, we affirm his convictions. We accept the State's concession that Sommer's sentence exceeds the statutory maximum for his offenses and remand for further proceedings consistent with this opinion.

## FACTS

Based on allegations that Sommer harassed Krishna Lee and violated no-contact orders, the State charged him with felony harassment, three counts of violation of a court order, and third degree malicious mischief.

Sommer's first trial ended in a mistrial. Before his second trial, the State moved to admit Lee's and Sommer's phone records as business records. The State pointed out that the records were accompanied by a certification from the

records custodian. Defense counsel did not object to the phone records themselves but objected to a demonstrative exhibit created by a police officer to explain the records. Sommer argued that the officer manipulated the data and that the exhibit prepared by the officer was hearsay and violated his right to confrontation. After clarifying that Sommer only objected to the officer's demonstrative exhibit and not to the underlying phone records prepared by Verizon, the court admitted the records and the demonstrative exhibit.

At trial, the State's evidence established that Sommer and Lee began dating in 2007. That same year, Sommer moved in with Lee, her father, and her children. In 2009, Sommer and Lee had a daughter, C.L.

In December 2010, Lee was sitting in her car with C.L. when Sommer grabbed Lee's neck from behind and struck her in the mouth. Lee's teenage daughter and father called the police. But when they arrived, Lee declined to cooperate. Lee's father asked Sommer to move out of the house.

Later in December, Lee brought C.L. to a motel to spend time with Sommer. Angry about having to move out of Lee's home, Sommer grabbed Lee's neck, refused to let her leave the room, and pulled the phone out of the wall when she threatened to call police. Lee left the motel room with C.L. and ran to her car. Sommer followed her outside and punched and broke the car's windshield.

In May 2011, Sommer showed up at Lee's home late at night. He threw a drink at Lee's father, pushed Lee down, kicked down the bathroom door, and destroyed Lee's cell phone.

In June 2011, after receiving threatening phone calls from Sommer, Lee called the police. The State charged Sommer with a domestic violence offense and issued a pretrial no-contact order.

In July 2011, following another threatening phone call in late June, Lee obtained an additional protection order prohibiting Sommer from having any contact with her or C.L. for one year.

On September 22, 2011, Sommer met Lee and C.L. in a parking lot. He was upset because he had been charged with violating the no-contact order. He blamed Lee for his legal troubles and thought she should pay for his court-ordered parenting classes. Sommer angrily told two-year-old C.L. that "Mommy is trying to put daddy in jail." He told Lee that if he had to go back to jail, he would kill her. Lee believed him. She quickly got back into her car and locked the doors. Sommer then broke the window near C.L.'s car seat, shattering glass onto her. Lee called her father and drove home.

During the drive home, Sommer called Lee's cell phone repeatedly. She testified that "[s]ometimes there would just be silence and I would hang up, and he would call back. Other times he was crying and I would hang up and he

would call back." At one point, Sommer threatened to jump off a bridge. The calls continued after Lee got home. "[A]s soon as I would hang up, he would call back, so my phone was continually engaged with his on these calls, and I was scared. I was scared that he would come there and hurt us, and I was scared that he was going to hurt himself."

Lee attempted to calm Sommer down, but he "said he was going to come over with his AK-47 and shoot me and my family." This concerned Lee because she knew that Sommer possessed this weapon. Sommer told her he "had nothing left to lose" and assured her that "I always do what I say I'm going to do."

Lee called the police and subsequently gave a statement to Bellevue Police Officer Sarah Finkel. Officer Finkel took photos of the shattered car window and numerous screens on Lee's phone. The latter depicted calls and text messages from and to Sommer.[1] Officer Finkel also located the scene of the parking lot incident and took photos of broken glass on the ground.

Officer Finkel eventually obtained a search warrant for Lee's and Sommer's Verizon phone records. The records mirrored the call and text data from Lee's phone.

In closing argument, the prosecutor argued that the felony harassment count rested on either Sommer's threat to kill Lee when they were in the parking

---

[1] The calls and texts span September 20 through September 22, 2011. Many of the photographed screens show Sommer's phone number. There are photos of 42 separate calls or texts on September 22, 2011.

lot or his subsequent threat to kill her with an AK-47. The first count for violation of a court order rested on Sommer's violation of the July 2011 order for protection. The prosecutor argued that Sommer violated the order when he called Lee and asked to arrange a visit with C.L., remained outside her car when she was seated inside it, sat next to C.L. in the backseat, and said to C.L., "Mom is trying to put me in jail."

The other counts for violation of a court order related to the June 2011 no-contact order. The prosecutor argued that Sommer violated that order by "the contact in the parking lot or the countless calls on the phone."

The jury convicted Sommer as charged. He appeals.

DECISION

Sommer first contends the trial court abused its discretion in admitting the e-mail containing the Verizon phone records. He argues that the accompanying "Certification of Custodian of Records" did not meet statutory requirements for admitting records without testimony from the person who prepared the records. He concludes the records were not properly authenticated and were therefore inadmissible hearsay. But the State correctly points out that Sommer did not raise this argument below and therefore waived it under RCW 10.96.030(4).[2] Sommer does not respond to the State's argument in his reply brief. Nor does he

---

[2] RAP 2.5(a); RCW 10.96.030(4) states in part, "Failure by a party to timely file a motion [opposing admission of the record before trial] shall constitute a waiver of objection to admission of the evidence."

offer any basis for considering the argument for the first time in this court. To the extent he suggests the trial court had a duty to review the certifications sua sponte for compliance with the statute, he cites no supporting authority.[3] Thus, his first contention fails.

Sommer next contends the court's admission of the telephone records and documents entitled "Explanation Form For Historical Records" violated his right to confrontation. The State counters, and the record confirms, that Sommer did not raise this contention below. This court generally will not address claims raised for the first time on appeal unless they involve manifest constitutional error.[4] To invoke this exception, "[t]he defendant has the initial burden of showing that (1) the error was 'truly of constitutional dimension' and (2) the error was 'manifest.'"[5] Sommer has not met this burden.

Sommer nowhere acknowledges that he raises this issue for the first time on appeal. Nor does he address RAP 2.5(a) or its requirements. While he does argue that constitutional error occurred, he fails to demonstrate that the alleged error is manifest. To do so, he must show actual prejudice by identifying how the

---

[3] RAP 10.3(a)(6); State v. Veliz, 160 Wn. App. 396, 409 & n.5, 247 P.3d 833 (2011) (appellate court need not consider arguments unsupported by authority).

[4] RAP 2.5(a).

[5] State v. Grimes, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011) (quoting State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)), review denied, 175 Wn.2d 1010 (2012).

alleged constitutional error actually affected his rights at trial.[6] Sommer argued in his opening brief that the phone records provided vital corroboration for Lee's testimony that he called her in violation of a court order. But the State points out, and the record confirms, that Lee's testimony was also corroborated by photos of her cell phone screens. The State also correctly notes our recent holding in a similar case that no manifest error occurred in the admission of phone records where the records proved what other evidence had already established.[7] Despite filing a reply brief, Sommer did not respond to the State's arguments.

In light of the State's arguments, which we find persuasive, and Sommer's failure to respond to them, we conclude he has failed to carry his burden of demonstrating manifest error.

Last, Sommer argues, and the State concedes, that the combination of his terms of confinement and community custody exceeds the statutory maximum sentence for his offenses. We accept the concession and remand for the trial court to either amend the community custody term or resentence Sommer consistent with RCW 9.94A.701(9).[8]

---

[6] State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007).
[7] State v. Fraser, 170 Wn. App. 13, 24-29, 282 P.3d 152 (2012), review denied, 176 Wn.2d 1022 (2013).
[8] See State v. Boyd, 174 Wn.2d 470, 473, 275 P.3d 321 (2012).

We affirm Sommer's convictions but remand his sentence for proceedings consistent with this opinion.

Leach, C.J.

WE CONCUR:

Verellen, J.

Becker, J.