# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49482-5-II |
| Respondent, | |
| v. | |
| PATRICK JAMES EDWARD DOCKERY, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Patrick James Edward Dockery appeals his jury trial conviction for second degree rape of a child.  He argues that (1) the trial court erred in failing to give an ER 404(b) limiting instruction, (2) he was provided ineffective assistance of counsel when counsel failed to move for a mistrial after the evidence was admitted, (3) there is insufficient evidence to support a finding that the victim was less than 14 years old at the time Dockery had sexual intercourse with her, and (4) there is insufficient evidence to support the aggravating circumstance that the victim was particularly vulnerable or incapable of resistance at the time.  Dockery also raises additional challenges in a statement of additional grounds.

We hold that Dockery's claims fail.  Accordingly, we affirm.[1]

---

[1] Dockery asks us to exercise our discretion and decline to impose appellate costs if the State prevails on this appeal.  The State "defers to the Court regarding any waiver of appellate costs." Br. of Resp't at 26.  We hold that if the State files a request for appellate costs, Dockery may challenge that request before a commissioner of this court under RAP 14.2.

FACTS

A.    THE INCIDENT

In July 2014, thirteen year old M.N.[2] accompanied her best friend, M.D., and M.D.'s family on a camping trip. M.D.'s girlfriend at the time, V.R., also went camping with M.D.'s family. The trip began Friday, July 25, and lasted three days. M.D.'s 25 year old brother, Dockery, arrived at the campsite on Saturday, July 26.

The minor girls began drinking alcohol on Saturday. M.N. openly consumed multiple bottles of Mike's Hard Lemonade, two cans of Mike's Harder Lemonade, and a shot of whiskey. According to M.N., everyone at the campsite saw the girls drinking and knew that they were consuming alcohol.

Eventually, M.N. vomited outside and inside of the tent she was meant to share with M.D. and V.R. that night. M.D. and V.R. decided to sleep in M.D.'s mother's car, which was parked nearby. Meanwhile, M.N. "passed out" inside of the tent alone. 1 Verbatim Report of Proceedings (VRP) (Aug. 30, 2016) at 181. At some point in the night, M.N. got up to get some water. As M.N. walked from her tent to a nearby table, she saw Dockery sleeping on a cot outside of her tent. According to M.N., she did not interact with Dockery while getting water, but instead, returned to her tent and fell back asleep.

Sometime after she returned to her tent, M.N. awoke to the sound of her tent being unzipped. M.N. looked back and saw Dockery enter her tent. Dockery then undressed M.N. and had vaginal intercourse with her.

---

[2] Pursuant to this court's General Order 2011-1, we use initials for child witnesses in sex crimes.

The next day, Sunday, M.D.'s mother drove M.N. home. On Monday, July 28, M.N. turned 14 years old.

Approximately a month following the camping trip, M.N. texted a friend about what had happened between her and Dockery in the tent. M.N.'s mother discovered these text messages and contacted law enforcement.

Dockery was subsequently charged with one count of second degree rape of a child.[3] The State later amended the charges against Dockery to allege an additional count of second degree child molestation.[4] The State also alleged an aggravating circumstance to each count that Dockery knew or should have known that M.N. was particularly vulnerable or incapable of resistance.[5]

B.      RELEVANT PORTIONS OF TRIAL

At trial, M.N. testified to the facts discussed above. M.N. also testified that as Dockery had sex with her, she "still felt really heavy and kind of numb" and that she "felt like [her] senses were really dull." 1 VRP (Aug. 30, 2016) at 184.

---

[3] A person is guilty of second degree rape of a child "when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1).

[4] A person is guilty of second degree child molestation "when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.086(1). "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

[5] RCW 9.94A.535(3)(b).

During M.N.'s testimony, the State moved to admit into evidence several photographs that the girls took at the campsite that weekend. First, the State moved to admit a copy of M.D.'s public Facebook page, which showed several pictures of the girls at the campsite on Saturday, July 26. M.N. testified that the pictures posted on M.D.'s Facebook page were from the camping trip.

Next, the State moved to admit a blown up picture of one of the photos on M.D.'s Facebook page. M.N. identified the people in this photo as herself, M.D., V.R., and Dockery. M.N. testified that this photo was taken on the Saturday of the camping trip. The trial court admitted both the copy of M.D.'s Facebook page and the individual photo into evidence. The trial court also admitted two photographs of M.N., M.D., and V.R., taken on Saturday, which depicted M.N. openly holding a bottle of Mike's Hard Lemonade at the campsite.

M.D. testified that the camping trip began Saturday and that everybody left the campsite on Monday. According to M.D., the majority of her family arrived at the campsite on Sunday, including Dockery. M.D. also testified that M.N. was 14 years old during the trip.

M.D. further testified that as she slept in her mother's car on the second night, she woke up to the sound of M.N. unzipping her tent. M.D. looked out the window of the car and saw M.N. leave the tent and begin to undress. M.D. then saw M.N. lay on top of Dockery as he slept on the cot. According to M.D., Dockery woke up and immediately pushed M.N. off of him.

V.R. also testified that she saw M.N. laying on top of Dockery on the cot that night. V.R. stated that M.N. was completely naked and that Dockery was fully clothed. According to V.R., Dockery was asleep and was not moving.

After the State rested its case-in-chief, Dockery moved to dismiss the second degree child molestation charge based on insufficient evidence. Dockery argued that if the jury believed M.N.'s testimony regarding what happened in the tent, that testimony would support the rape allegation. As to the testimony regarding the cot, Dockery argued that the evidence was insufficient to support a finding of child molestation. Specifically, Dockery argued that the State failed to present any evidence that Dockery touched M.N.'s sexual or intimate parts to support the second degree child molestation charge.

The trial court agreed that M.D. and V.R.'s testimony regarding what happened on the cot failed to provide sufficient evidence of sexual contact. Nonetheless, the trial court ruled that the evidence regarding the tent was sufficient to support the molestation charge. The trial court also ruled that the jury may consider both the molestation and rape charges based on the evidence regarding the tent, but if the jury found Dockery guilty on both counts, then the merger doctrine would apply.

Dockery conceded that the State was permitted to present both charges to the jury. However, Dockery argued that a supplemental jury instruction was appropriate to preclude the jury from considering the testimony regarding M.N. and Dockery's interaction on the cot as evidence of guilt on the child molestation charge. Specifically, Dockery proposed the following jury instruction:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of testimony that the alleged victim got on top of the defendant outside of the tent while he was laying on the cot. This evidence may be considered by you only for the purposes of determining the credibility of the witnesses. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

No. 49482-5-II

WPIC 5.30 Evidence Limited as to Purpose

Clerk's Papers (CP) (emphasis omitted) at 144. The trial court rejected Dockery's proposed jury instruction, finding it to be a comment on the evidence by the court.

The jury found Dockery guilty on both counts. The jury also returned a special verdict on both counts finding an aggravating circumstance that Dockery knew or should have known that M.N. was particularly vulnerable or incapable of resistance.

The trial court sentenced Dockery only on the second degree rape of a child conviction, finding that the second degree child molestation conviction merged in to the second degree rape of a child conviction.

Dockery appeals.

ANALYSIS

A.    ER 404(b) LIMITING INSTRUCTION

Dockery argues that the trial court erred by failing to give his proposed "ER 404(b) limiting instruction[]" regarding the evidence that M.N. undressed and climbed on top of Dockery as he slept on the cot. Br. of Appellant at 14. We disagree.

1.    Standard of Review

We review a trial court's refusal to give a proposed jury instruction for an abuse of discretion. *State v. Hummel*, 165 Wn. App. 749, 777, 266 P.3d 269 (2012), *review denied* 176 Wn.2d 1023 (2013). A trial court abuses its discretion when its decision " 'is manifestly unreasonable or based upon untenable grounds or reasons.' " *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012) (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). A trial

6

court's decision is manifestly unreasonable if it falls " 'outside the range of acceptable choices, given the facts and the applicable legal standard.' " *Id.* (*In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)). The trial court's decision is based upon untenable reasons " 'if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.' " *Id.*

2. The Trial Court did not Abuse its Discretion

Dockery argues that the trial court erred in refusing to give his proposed jury instruction because such refusal allowed the jury to consider Dockery's prior misconduct on the cot as evidence of his propensity to commit an offense against M.N. We disagree.

ER 404(b) prohibits the trial court from admitting "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." This prohibition encompasses any evidence offered to " 'show the character of a person to prove the person acted in conformity' " with that character at the time of the offense. *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007) (quoting *State v. Everybodytalksabout*, 145 Wn.2d 456, 466, 39 P.3d 294 (2002)). However, ER 404(b) evidence may still be admissible for another purpose, such as proof of motive, plan, or identity. *Id.* The purpose of ER 404(b) is not " 'to deprive the State of relevant evidence necessary to establish an essential element of its case.' " *Id*. (quoting *State v. Lough*, 125 Wn.2d 847, 859, 889 P.2d 487 (1995)). Instead, its purpose is to prevent the State from suggesting that a defendant is guilty of the charged crime because "he or she is a criminal-type person" who would likely commit such crime. *Id.*

7

If evidence of the defendant's prior crimes, wrongs, or acts is admissible for a proper purpose, then the defendant, upon request, is entitled to a limiting instruction. *State v. Gresham*, 173 Wn.2d 405, 423, 269 P.3d 207 (2012). "An adequate ER 404(b) limiting instruction must, at a minimum, inform the jury of the purpose for which the evidence is admitted and that the evidence may not be used for the purpose of concluding that the defendant has a particular character and has acted in conformity with that character." *Id.* at 423-24. The trial court has no duty to give an ER 404(b) limiting instruction sua sponte. *State v. Russell*, 171 Wn.2d 118, 124, 249 P.3d 604 (2011).

Dockery contends that the evidence became "irregularly admitted," " 'untested' ER 404(b) evidence" because (1) the trial court ruled the evidence was insufficient for the jury to find Dockery guilty of child molestation based on his conduct on the cot, and (2) the State "abruptly changed its theory" of the case by arguing the child molestation took place in the tent after the trial court's ruling. Br. of Appellant at 11-12. But the record shows that the State complied with the trial court's ruling and limited its argument to what happened within the tent and not what happened on the cot. The record also shows that the State did not abruptly change its theory of the case.

Dockery argues that the trial court erred by failing to give his proposed limiting instruction based on ER 404(b). However, his proposed instruction was never based on ER 404(b). Instead, Dockery proposed a limiting instruction precluding the jury from considering M.D. and V.R.'s testimony about what happened on the cot as evidence of guilt on the second degree child

molestation charge. Thus, it was not untenable for the trial court to not provide an ER 404(b) limiting instruction.[6]

### 3. Harmless Error

Even when the trial court has a duty to correctly instruct the jury by providing an ER 404(b) limiting instruction, such failure may still be harmless. *Gresham*, 173 Wn.2d at 425. "Evidentiary errors under ER 404 are not of constitutional magnitude." *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984). Therefore, we must determine whether, " 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' " *Gresham*, 173 Wn.2d at 425 (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

Here, even had Dockery objected, and the trial court had found the evidence related to the cot to be evidence of prior acts under ER 404(b), this error would have been harmless. Dockery argues that the testimony regarding the cot was evidence of Dockery's "propensity to commit an offense against [M.N.]." Br. of Appellant at 16. However, if anything, the evidence showed that Dockery had a propensity for refusing M.N.'s sexual advances and pushing M.N. away from him.

---

[6] Dockery urges us to reach the same conclusion that we did in *State v. Russell*, 154 Wn. App. 775, 781-82, 225 P.3d 478 (2010), *rev'd*, 171 Wn.2d 118, 249 P.3d 604 (2011), and hold "that when ER 404(b) evidence is admitted, a limiting instruction must be given." Br. of Appellant at 14. In *Russell*, we held that the trial court was obligated to provide an ER 404(b) limiting instruction even though neither party requested such instruction. 154 Wn. App. at 786. However, our Supreme Court reversed this holding and specifically "disavow[ed] any interpretation of our previous case law suggesting a trial court commits reversible error by failing to give a limiting instruction for ER 404(b) evidence absent a request for such an instruction." *Russell*, 171 Wn.2d at 124.

Dockery fails to show within reasonable probability, that the trial outcome would have been materially affected absent this evidence. Therefore, even if the trial had erred, such error would be harmless.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Dockery contends that he was provided ineffective assistance of counsel at trial because his trial counsel failed to ask for a mistrial after the trial court ruled that the previously admitted evidence that M.N. undressed and climbed on top of him as he slept on the cot was insufficient to support the child molestation charge. We disagree.

1.    Legal Principles

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantee the accused the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). An ineffective assistance of counsel claim is a mixed question of law and fact that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

To have a criminal conviction reversed based on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) this deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at 32-33 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). An ineffective assistance claim fails if the defendant fails to satisfy either prong. *Id.* at 33.

2.      Counsel's Performance was not Deficient

Counsel's performance is deficient if it falls " 'below an objective standard of reasonableness.' " *Id.* (quoting *Strickland*, 466 U.S. at 688). To prevail, the defendant must overcome "a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that " 'there is no conceivable legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). However, a " 'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " *Id.* at 34 (quoting *Strickland*, 466 U.S. at 689).

Here, there were legitimate tactical reasons for Dockery's trial counsel to not seek a mistrial based on the testimony related to the incident on the cot. Both M.D. and V.R. testified that they saw M.N. undress and climb on top of Dockery as he laid unconscious on the cot. M.D. testified that Dockery woke up and then immediately pushed M.N. off of him. This testimony cast doubt on M.N.'s testimony that Dockery would be inclined to seek her out and have sex with her. In fact, Dockery used this fact to his advantage during closing argument, when he drew the jury's attention to the evidence that Dockery pushed M.N. off of him when he woke up on the cot.

Because the evidence was actually favorable to Dockery, defense counsel had a conceivable legitimate tactical reason to not move for a mistrial. Therefore, Dockery fails to show that his counsel's performance fell below an objective standard of reasonableness.

3.      No Prejudice

Dockery also fails to show prejudice. Dockery argues that this testimony prejudiced him because it was improper propensity evidence under ER 404(b). However, Dockery fails to explain how evidence that he refused the sexual advances of a minor girl was prejudicial in a case where the State accused him of having sexual contact with a minor girl. If anything, this evidence showed that Docker had a propensity to avoid sexual contact with M.N., even when she initiated such contact. Thus, we hold that Dockery's ineffective assistance of counsel claim fails.

C.      SUFFICIENCY OF THE EVIDENCE

Dockery argues that the State failed to present sufficient evidence that M.N. was less than 14 years old when Dockery had sex with her on the camping trip. Dockery also contends that the State presented insufficient evidence to support the aggravating factor that Dockery knew or should have known that M.N. was particularly vulnerable or incapable of resistance at the time. We disagree on both accounts.

1.      Standard of Review

In determining whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). An insufficiency claim admits the truth of the State's evidence. *Id.* at 106. All reasonable inferences from the evidence " 'must be drawn in favor of the State and interpreted most strongly against the defendant.' " *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192,

201, 829 P.2d 1068 (1992)).  Direct and circumstantial evidence are equally reliable.  *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

We review a challenge to the sufficiency of the evidence de novo.  *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).  We also review "a jury's special verdict finding the existence of an aggravating circumstance under the sufficiency of the evidence standard."  *State v. Chanthabouly*, 164 Wn. App. 104, 142, 262 P.3d 144 (2011), *review denied*, 173 Wn.2d 1018 (2012).

2.      Sufficient Evidence Presented to Show M.N. was Less than 14 Years Old

A person is guilty of second degree rape of a child if that person "has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim."  RCW 9A.44.076(1).  Sexual intercourse "occurs upon any penetration, however slight."  RCW 9A.44.010(1).

Dockery claims that he did not arrive at the campsite until Sunday, July 27.  He also claims that the sexual intercourse did not occur until after midnight that night, after M.N. turned 14.  However, we defer to the fact finder on issues of witness credibility and the persuasiveness of evidence.  *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

Here, M.N. testified that at the time of the camping trip, she was 13 years old.  She also testified that on the second day of the camping trip, Saturday, July 26, Dockery came inside of her tent and had vaginal intercourse with her.  Also, the court admitted a copy of M.D.'s Facebook page, which showed a picture of M.N. and Dockery together at the campsite, which was uploaded

on Saturday, July 26. M.N. turned 14 years old Monday, July 28. Viewing this evidence in a light most favorable to the State, a rational fact finder could have found that Dockery was indeed at the campsite on Saturday, July 26, and that M.N. was less than 14 years old when Dockery had sexual intercourse with her. Therefore, we hold that Dockery's argument fails.

 3.  Sufficient Evidence Supported the Finding of an Aggravating Circumstance

 Dockery argues that the State failed to present sufficient evidence for the jury to find that Dockery knew or should have known that M.N. was particularly vulnerable or incapable of resistance at the time of the offense. We disagree.

 A jury finding that a victim was particularly vulnerable or incapable of resistance can support a sentence above the standard sentencing range. RCW 9.94A.535(3)(b). In order for the court to impose a sentence above the standard range based on the particular vulnerability[7] of the victim, the jury must find that "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance." RCW 9.94A.535(3)(b).

 Dockery's sufficiency challenge is based on whether the State presented sufficient evidence for the jury to conclude that Dockery was aware of M.N.'s level of intoxication. He specifically argues that Dockery "had no way of knowing how impaired [M.N.] may have been"

---

[7] "Vulnerability can be the result of characteristics other than the victim's physical condition or stature." *State v. Ross*, 71 Wn. App. 556, 565, 861 P.2d 473 (1993), *amended*, 71 Wn. App. 556 (1994). For example, Washington courts have found that rape victims attacked in their sleep are particularly vulnerable because they can quickly be rendered incapable of attempting to resist, as compared to rape victims attacked while awake. *See State v. Hick*, 61 Wn. App. 923, 931, 812 P.2d 893 (1991).

because Dockery himself was intoxicated and M.N. was consuming alcohol secretly. Br. of Appellant at 25. The record does not support this argument.

M.N. testified that everyone at the campsite on Saturday saw and knew that she was consuming alcohol. She had consumed multiple drinks over the course of the afternoon to the point that she publically vomited outside of her tent. The trial court admitted into evidence two photographs that were taken on Saturday showing M.N. openly holding a bottle of Mike's Hard Lemonade at the campsite. The trial court also admitted a photo that was taken on Saturday depicting M.N., M.D., V.R., and Dockery. Viewing this evidence in the light most favorable to the State, a reasonable fact finder could have found that Dockery, who was present at the campsite on Saturday, knew or should have known that M.N. was intoxicated.

Dockery argues that the State presented insufficient evidence to show that Dockery should have known M.N. was intoxicated because M.D. and V.R. had testified that they were secretly drinking that day. However, we view the evidence and draw all reasonable inferences in a light most favorable to the State. *Homan*, 181 Wn.2d at 106. And we defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *Ague-Masters*, 138 Wn. App. at 102.

Dockery also argues that the State failed to present sufficient evidence for the jury to conclude that M.N.'s alcohol intake made her "more susceptible to becoming a victim" because both M.N. and Dockery were equally intoxicated Br. of Appellant at 26. Dockery offers no support for his argument that his own level of intoxication somehow influenced whether M.N. was particularly vulnerable. Nonetheless, this argument is without merit because "[w]hen analyzing

15

particular vulnerability, the focus is on the victim. The court determines if the victim is more vulnerable to the offense than other victims and if the defendant knew of that vulnerability." *State v. Bedker*, 74 Wn. App. 87, 94, 871 P.2d 673, *review denied*, 125 Wn.2d 1004 (1994).

Dockery also fails to offer any factual or legal support for his argument that "[t]here was no evidence presented that due to [M.N.]'s alcohol use she was more susceptible to becoming a victim." Br. of Appellant at 26. To the contrary, the evidence at trial showed that M.N. drank to the point of vomiting inside and outside of her tent. She "passed out" in her tent; and, when Dockery had sex with her, she "felt really heavy and kind of numb" and that her senses were dulled. 1 VRP (Aug. 30, 2016) at 181, 184. Based on this evidence, the jury could reasonably conclude that M.N. was particularly vulnerable or incapable of resisting sexual assault when compared to other victims. Thus, we hold that Dockery's challenge fails.

D.     STATEMENT OF ADDITIONAL GROUNDS

In a statement of additional grounds, Dockery asks us to review: (1) whether the prosecutor knowingly elicited and presented false evidence at trial, (2) whether the State committed *Brady*[8] violations by withholding evidence, (3) whether the prosecutor knowingly failed to correct false testimony regarding M.N.'s anxiety and depression, (4) whether the court erred in failing to provide a unanimity instruction, and (5) whether the cumulative errors deprived Dockery of his right to a fair trial. We hold that each of these claims fails.

---

[8] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

1.      Knowingly Elicited False Testimony

Dockery argues that the prosecutor knowingly elicited and presented false testimony by presenting the testimony of two officers who were not knowledgeable as to whether the gates of the campsite were locked that weekend. We disagree.

Dockery relies on *Napue v. People of State of Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed 1217 (1959), to support his claim that the State knowingly elicited false testimony. In *Napue*, the U.S. Supreme Court held that the "State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." 360 U.S. at 269. A " 'conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 936, 952 P.2d 116 (1998) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)). Thus, to prove that the State knowingly elicited false testimony, the defendant must show that (1) the State knowingly used perjured testimony and (2) there was a reasonable likelihood that the false testimony could have affected the jury's judgment. *Id.* at 937.

Here, Dockery points to contradictions between the officers' testimony and the testimony of other witnesses about locked gates at the campsite to support his claim that the State knowingly elicited false testimony. However, this alone does not show that the officers' testimony was false. It is not uncommon for the testimony of different witnesses to conflict, and we defer to the fact finder on issues of conflicting testimony. *See Ague-Masters*, 138 Wn. App. at 102. Further, even if Dockery did show that the officers' testimony was false, there is no evidence in the record

17

showing that the State knew such testimony was false. Dockery also does not explain how the testimony, which addressed whether the gates leading to the campsite were locked, would have affected the jury's findings. Therefore, we hold that this argument fails.

2.      *Brady* Violation

a.      Standard of review

A violation of the State's *Brady* obligations is a violation of constitutional due process. *State v. Mullen*, 171 Wn.2d 881, 893, 259 P.3d 158 (2011). We review de novo alleged due process violations. *Id.* Therefore, we review claims under *Brady* de novo. *Id.* at 894.

b.      State did not violate *Brady*

" 'The animating purpose of *Brady* is to preserve the fairness of criminal trials.' " *Id.* at 895 (quoting *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006)). The *Brady* rule is not intended to " 'displace the adversary system,' " and " 'the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose *evidence* favorable to the accused, that, if suppressed, would deprive the defendant of a fair trial.' " *Id.* (quoting *Morris*, 447 F.3d at 742). In order for the defendant to establish a *Brady* violation, the defendant must show: (1) that the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching, (2) that the State suppressed such evidence, either willfully or inadvertently, and (3) the defendant suffered resulting prejudice. *Id.*

Here, Dockery fails to establish any of the three required elements in arguing that the State violated *Brady* by withholding a statement that M.N. gave to law enforcement officers. Dockery's sole argument here is that three different officers testified that M.N. had given them a statement,

but M.N. testified at trial that she "gave about two" statements. SAG at 5. According to Dockery, this means that there was a third statement not provided to defense. However, Dockery fails to explain how M.N. testifying at trial that she gave "about two" statements somehow shows that the State failed to provide a third statement to defense. SAG at 5. There is no evidence in the record of the State possessing a third statement from M.N. that was not produced to the defense. Even if Dockery did show that the State withheld a statement M.N. provided to law enforcement, Dockery fails to show how this statement would have been favorable to him or how he suffered resulting prejudice. Therefore, we hold that his *Brady* argument fails.

Dockery also argues that the State violated its *Brady* obligations by (1) withholding contact information of a witness who was present at the camping trip and (2) failing to disclose that one of the testifying officers had previously altered evidence in a different case. As to the witness contact information, Dockery fails to show that the witnesses had any information that was favorable to him. Therefore, we find his argument fails.

As to the State's failure to disclose that one of the testifying officers, Darrin Wallace, had altered evidence in a previous trial, Dockery relies solely on an unpublished opinion from this court, which referenced the testimony of an officer named Darrin Wallace. Assuming that these are in fact the same officers, Detective Wallace's testimony in the previous case was that he had inadvertently changed one of the dates shown on an iPod containing a series of poems the defendant wrote to the victim. *State v. Gotcher*, No. 461196-II, slip op. at 4 (Wash. Ct. App. Feb. 23, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2046119-6-II%20%20Unpublished%20Opinion.pdf,, *review denied*, 186 Wn.2d 1010 (2016). Dockery fails

to explain how evidence that Detective Wallace had accidentally changed the date on an iPod in a previous case, and then informed the jury of such mistake, would have been favorable to him. He also fails to show that the State either willfully or inadvertently suppressed this information or that he suffered resulting prejudice.

Further, " '[a] *Brady* violation does not arise if the defendant, using reasonable diligence, could have obtained the information' at issue." *Benn*, 134 Wn.2d at 916 (quoting *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994)). Dockery's assignment of error shows that with reasonable diligence, he could have readily found this information. Therefore, we hold that this assignment of error fails.

### 3.    Prosecutorial Misconduct

Dockery contends that the State engaged in prosecutorial misconduct by presenting testimony that M.N. exhibited new signs of anxiety and depression after the camping trip, which the State knew was false. Again, Dockery relies on *Napue* to support his claim.

The defendant bears the burden of demonstrating that the prosecutor's comments at trial were both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). When the defendant fails to object or request a curative instruction at trial, the issue of prosecutorial misconduct is waived, unless the prosecutor's conduct was so flagrant and ill intentioned that the resulting prejudice could not have been cured through an instruction. *Id.* at 443.

Here, there is no evidence in the record showing that the State knew the testimony about M.N.'s change in behavior after the camping trip was false. However, the record does show that

Dockery raised this issue to the trial court by arguing that he should be entitled to bring evidence of M.N.'s mental health condition in light of her mother's testimony. The trial court ruled that the mother's testimony opened the door for Dockery to present evidence of M.N.'s mental health history. Thus, Dockery was provided the opportunity to present evidence of M.N.'s mental health history. Dockery fails to explain how he was prejudiced when he had the opportunity to correct the testimony and delve into M.N.'s mental health history prior to the camping trip. Therefore, we hold that this claim fails.

4.      Failure to Provide a Unanimity Instruction

Dockery argues that the trial court erred in failing to provide the jury with his requested unanimity instruction. We disagree.

In order to convict a defendant of a criminal charge, the jury must unanimously find that the defendant committed the criminal act. *State v. Camarillo*, 115 Wn.2d 60, 63, 794 P.2d 850 (1990). When there is evidence of multiple acts of misconduct which relate to one charge against the defendant, then the State must elect which act it is relying upon for a conviction. *Id.* Failure of the State to elect which act it relies upon, and failure of the court to then provide a unanimity instruction "is 'violative of a defendant's state constitutional right to a unanimous jury verdict and United States constitutional right to a jury trial.' " *Id.* at 64 (quoting *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988)).

Here, Dockery never proposed a unanimity instruction. Instead, Dockery proposed a jury instruction, under WPIC 5.30 which is "a generic instruction to be used when evidence is admissible only for a limited purpose." WPIC 5.30.

21

No. 49482-5-II

As to unanimity, the State did elect that it was relying on Dockery's act inside of the tent to support both convictions. In closing, the State specifically limited its argument to the evidence that Dockery went inside of M.N.'s tent, undressed M.N., and had vaginal intercourse with her inside of the tent. Thus, the State did elect which act it relied upon for a conviction, and the trial court was not required to provide a unanimity instruction. Therefore, the trial court did not err in failing to provide a unanimity instruction.

5.      Cumulative Error Doctrine

Dockery contends that the combined errors he has identified deprived him of a fair trial and compel reversal. Because Dockery has failed to show any error here, we find that his cumulative error argument fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Maxa, C.J.

_____
Melnick, J.

22